GRIMES, Justice.
We review an order of the Florida Public Service Commission (Commission) relating to the rates of a utility providing electric service. We have jurisdiction under article V, section 3(b)(2) of the Florida Constitution.
On November 17, 1988, Tampa Electric Company (TECO) filed a petition for approval of a supplemental service rider for interruptible service. The proposed rider offered an incentive discount to those inter-ruptible customers who increased their energy consumption above a specified billing energy threshold. The Commission staff recommended the denial of the petition. After discussion of the matter at the December 20, 1988, agenda conference, the Commission approved the staffs recommendation of denial but indicated that it would approve a revised tariff if twenty percent of the incremental fuel savings derived from the new rate were allocated to the general ratepayers. At that time, TECO’s representative indicated that TECO would file a revised tariff meeting the Commission’s requirements which would have an effective date of January 1, 1989. The Commission’s action was reflected in an order entered January 10, 1989. In the meantime, TECO filed the revised tariff.
On May 5, 1989, the Office of Public Counsel (OPC) filed a protest and request for hearing on the supplemental service rider alleging that the tariff as revised did not conform to the Commission’s order of January 10, 1989, and that it had not been approved as final agency action pursuant to the Administrative Procedure Act, chapter 120, Florida Statutes (1987). The Commission rejected public counsel’s assertions in an order dated October 25, 1989, stating:
Public Counsel contends that we must conduct a hearing, or use our Proposed Agency Action procedure before taking final action which results in a rate increase. Therefore, Public Counsel has requested that we rescind approval of the tariff, and place the parties in the same status they occupied prior to the tariff’s effective date.
The argument now being embraced by Public Counsel is the same argument rejected by the Supreme Court of Florida in Florida Interconnect Telephone Company v. Florida Public Service Commission, 342 So.2d 811 (Fla.197[6]). In that case, which was decided under the 30 day file-and-suspend statute (since amended to 60 days), Interconnect filed its complaint protesting application of a tariff 31 days after the tariff was filed by the utility. Interconnect argued that our approval of the tariff was improper because there was no opportunity for a hearing after reasonable notice, pursuant to the Administrative Procedure[] Act which requires a hearing before the entry of a final order affecting the substantial interest of a party.
The Supreme Court rejected Interconnect’s argument because by the time Interconnect filed its complaint with the Commission, more than thirty days had *891 elapsed from the utility’s filing of the tariff. According to the Supreme Court, if we do not suspend the proposed tariff changes within thirty days the rates automatically go into effect. The Court further stated that the file-and-suspend procedure “survives the adoption of the new Administrative Procedure Act.” 342 So.2d at 814.
[[Image here]]
In the instant docket, Public Counsel’s protest and request for hearing comes not one day late, as in Interconnect, but months after the tariff went into effect. Nonetheless, consistent with our action in Interconnect, it remains our policy to afford hearings on complaints which protest the prospective application of tariffs in cases such as this.
Therefore, we will treat Public Counsel’s Protest and Request for Hearing as a complaint attacking the prospective application of the tariff and will afford a hearing on it.
Public counsel has appealed that order.[1]
Public counsel contends that the Commission’s decision that it would approve TECO’s revised tariff providing an eighty/twenty percent split of any incremental fuel savings between the interrupti-ble and general ratepayers was reached without offering a clear point of entry into the agency decision-making process. Public counsel contends that he was entitled to an opportunity to request a hearing before the new rates were approved. He says that his protest and request for a hearing could not have been too late because the Commission never gave the notice required by section 120.59(4), Florida Statutes (1987). Further, public counsel contends that the Commission cannot delegate to staff the authority to determine whether the revised tariff met its requirements and argues that the revised tariff as approved by staff was not consistent with the Commission’s decision at the agenda conference.
We conclude that no violation of the Administrative Procedure Act occurred and that public counsel was not denied procedural due process. The Commission was obviously treating TECO’s supplemental service rider as having been filed under the file-and-suspend law. § 366.06(3), Fla.Stat. (1987). As we reaffirmed in Citizens of the State of Florida v. Wilson, 568 So.2d 904 (Fla.1990), when a utility files a tariff changing its rates, the Commission may allow the tariff to go into effect on an interim basis without the necessity of a hearing. Here, as in Wilson, the Commission discussed the proposed rate change at an agenda conference. Unlike Wilson, however, the Commission denied the supplemental service rider which was the equivalent of withholding its consent to the tariff pursuant to section 366.06(3). Had no other action been taken, this would have had the effect of staying TECO’s proposed rate change. However, the Commission went on to decide that it would approve a revised tariff under which the general ratepayers would receive twenty percent of the savings accomplished as a result of the rate change. TECO filed the revised supplemental service rider, and the Commission took no further action upon it.
Under the file-and-suspend law, the new rates would have become effective on an interim basis without a hearing when the Commission took no action within sixty days of the filing of the revised supplemental service rider. The purpose of the statutory sixty-day period is to give the Commission time within which to determine whether or not to withhold its consent to the proposed rate change. Because the Commission affirmatively concluded not to contest the supplemental service rider if it were revised according to its requirements, we do not think the Commission’s action in permitting the rider to become effective on January 1, 1989, rather than sixty days after its filing, violated the spirit of the file-and-suspend law.
*892 Further, we do not believe that the Commission improperly delegated to its staff the authority to approve the revised supplemental service rider. The Commission specified the conditions for approval, and the staff merely carried out the ministerial task of seeing whether these conditions were met. We reject the contention that the revised supplemental service rider did not fully meet the conditions imposed by the Commission at its agenda conference. Contrary to public counsel’s argument, there was nothing said at the agenda conference or contained in the Commission vote sheet or its January 10, 1989, order which required that the marginal fuel cost be applied when it exceeds the average cost.
Accordingly, we affirm the order of the Public Service Commission.[2] However, as in Wilson, we point out that under the file-and-suspend law, the rates reflected in the revised supplemental service rider are only interim rates and the Commission is obligated to afford interested parties the opportunity for a hearing before the entry of any final order with respect to such rates.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, EHRLICH, BARKETT and KOGAN, JJ., concur.

. We reject appellees’ contention that the order is not appealable. It does more than merely set a hearing; it also has the effect of denying public counsel’s protest of the procedure followed in approving the new tariff.

. Although we approve the procedure used here, we would suggest the Commission use it sparingly because of its potential for confusion. In effect, the Commission specified the type of petition from which it would not withhold consent before the petition was actually filed. Consequently, the staff was able to administratively approve the interim rates, without another Commission vote, and allowed the rates to go into effect before the sixty days in which the Commission could withhold consent had expired.
If the Commission does choose to follow this procedure, it should specify in the order denying the original petition the exact modifications that will be accepted, the fact that the modifications will be administratively approved without another Commission vote, and the timetable for the modified petition to take effect. Further, since in this case the modified petition received administrative approval and took effect before the Commission's order was issued, we would urge the Commission to timely issue its orders in these cases. Finally, the utilities should note in their modified petitions that the modifications are only subject to administrative approval and should specifically refer to the Commission's order allowing for administrative approval (or, if that order is not available, to the agenda conference at which the Commission voted to allow administrative approval of the modified petition).