GRIMES, Justice.
We review an order of the Florida Public Service Commission (Commission) relating to the rates of a utility providing telephone service. We have jurisdiction under article V, section 3(b)(2) of the Florida Constitution.
On May 12, 1987, Southern Bell Telephone and Telegraph Company (Southern Bell) filed a tariff to introduce banded rate pricing for custom calling services and prestige single line services. On October 21, 1987, the Commission approved the tariff which established a specific rate band with different minimum and maximum rates for each feature of the custom calling and prestige single line services within which the company could adjust the price. However, rather than preapproving the tariff reflecting individual rate changes within the band, the order provided that each tariff filing which altered rates for these services would continue to be subject to the normal tariff-approval process.
On August 1, 1989, Southern Bell filed a tariff proposal to raise existing custom calling service rates within the approved rate band. On August 16, 1989, the Office of Public Counsel (OPC) filed a request for a hearing on this tariff filing. The Commission entered an order on September 19, 1989, which approved the new tariff. With respect to the request for hearing, the order stated:
OPC argued at our Agenda Conference on August 29, 1989, that it was entitled to a hearing prior to this tariff filing going into effect. Based on Florida Interconnect Telephone Company v. Florida Public Service Commission, 342 So.2d 811, [(Fla.1976)] a party is not entitled to a hearing prior to a tariff filing going into effect. This is certainly not to say that a substantially-affected party is not entitled to a hearing. However, such hearing may be granted after the subject tariff filing goes into effect. Setting reasonable rates for utilities is a legislative function, not a judicial function.
As the Florida Supreme Court stated in the Florida Interconnect case, the “file-and-suspend” statute, Section 364.-05(4), Florida Statutes, survived the adoption of the Administrative Procedure Act which is Chapter 120, Florida Statutes. OPC cited Chapter 120 as its authority for its right to a hearing prior to these rates going into effect. Upon the passage of thirty days, these rates would go into effect without any affirmative action by this Commission. In that sense, this Order is, as the Florida Supreme Court stated, “surplusage.”
Based on the foregoing, we find it appropriate to deny OPC’s request for a hearing prior to this tariff filing going into effect. However, we will accept OPC’s filing as a complaint and, as such, we will set it for hearing in a separate docket.
The real controversy in this case involves the interpretation of Florida’s file-and-suspend laws.[1] These laws were designed to reduce the so-called “regulatory lag” inherent in full rate proceedings. Citizens of Florida v. Mayo, 333 So.2d 1 (Fla.1976). The statute applicable to telephone companies is section 364.05(4), Florida Statutes (1987), which reads as follows:
(4) Pending a final order by the commission in any rate proceeding under this *906 section, the commission may withhold consent to the operation of all or any portion of the new rate schedules, delivering to the telephone company requesting such increase, within 60 days, a reason or written statement of good cause for withholding its consent. Such consent shall not be withheld for a period longer than 8 months from the date of filing the new schedules. The new rates or any portion not consented to may, at the option of the company, go into effect under bond or corporate undertaking at the end of such period, but the commission shall, by order, require such telephone company to keep accurate account in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid and, upon completion of hearing and final decision in such proceeding, shall by further order require such telephone company to refund with interest at a fair rate, to be determined by the commission in such manner as it may direct, such portion of the increased rate or charge as by its decision shall be found not justified. Any portion of such refund not thus refunded to patrons or customers of the telephone company shall be refunded or disposed of by the telephone company as the commission may direct; however, no such funds shall accrue to the benefit of the telephone company. The commission shall take final commission action in the docket and enter its final order within 12 months after the commencement date for final agency action. As used in this section, “commencement date for final agency action” means the date upon which it has been determined by the commission or its designee that the telephone company has filed with the clerk the minimum filing requirements as established by rule of the commission. Within 30 days after receipt of the application, rate request, or other written document for which the commencement date for final agency action is to be established, the commission or its designee shall either determine the commencement date for final agency action or issue a statement of deficiencies to the applicant, specifically listing why the applicant has failed to meet the minimum filing requirements. The statement of deficiencies shall be binding upon the commission to the extent that, once the deficiencies in the statement are satisfied, the commencement date for final agency action shall be promptly established as provided in this section. Thereafter, within 15 days after the applicant indicates to the commission that it believes that it has met the minimum filing requirements, the commission or its designee shall either determine the commencement date for final agency action or specifically enumerate in writing why the requirements have not been met, in which case this procedure shall be repeated until the commencement date for final agency action is established. When the commission initiates a proceeding, the commencement date for final agency action shall be the date upon which the order initiating the proceeding is issued.
Public counsel concedes that the Commission had the right to allow the increased rates in Southern Bell’s tariff to go into effect on an interim basis without the necessity of a hearing. However, he asserts that the Commission could not enter a final order approving the rate increase without first affording him an opportunity to be heard pursuant to section 120.57, Florida Statutes (1987). The Commission responds that it was operating within the dictates of Florida Interconnect Telephone Co. v. Florida Public Service Commission, 342 So.2d 811 (Fla.1976), when it allowed the rates to go into effect by not withholding its consent and thereafter approving the rate increase. The Commission contends that it protected public counsel’s right to a hearing when it construed his request as a complaint and directed that it be set for hearing in a separate docket. Southern Bell argues that, when the Commission chose not to withhold its consent to the new rates, its tariff simply became effective on a temporary basis pending a final hearing.
An analysis of the opinion in Florida Interconnect Telephone is essential to our *907 decision. On May 24, 1975, Southern Bell filed a tariff which provided for a rate reduction. On June 27, 1975, Florida Interconnect filed a complaint alleging that its substantial interests would be affected by the rate change and requested a hearing thereon. At an agenda conference held on July 7, 1975, the Commission approved the proposed tariff without notice to Florida Interconnect. Florida Interconnect filed a petition for writ of certiorari in this Court contending that the Commission’s approval of Southern Bell’s tariff was improper because Florida Interconnect was not afforded an opportunity for a hearing upon reasonable notice as required by section 120.-57, Florida Statutes (1975). The Court concluded that the Commission’s order did not constitute final agency action, as contemplated by section 120.57, and denied the petition. The Court explained that under the file-and-suspend law the new tariff automatically went into effect unless the Commission withheld its consent within the requisite time period.[2] Thus, the Court held that the order approving the rate change “was in a very real sense surplus-age” because once the Commission had failed to withhold its consent, the rates automatically became effective. Florida Interconnect Telephone, 342 So.2d at 813. Further, the Court noted that the Commission had offered Florida Interconnect the opportunity to have a hearing on its complaint.
The instant case is in much the same posture as that in Florida Interconnect Telephone. Rather than simply taking no action within thirty days[3] of the filing of Southern Bell’s tariff, the Commission discussed the proposed rate increase at an agenda conference and subsequently entered an order approving the new tariff. As in Florida Interconnect Telephone, insofar as it purported to approve the rate increase, the order was surplusage. Thus, the order did not constitute final agency action, and public counsel was not deprived of a hearing under section 120.57.[4] This is not to say, however, that the order served no purpose. It not only memorialized the Commission’s decision at the agency conference not to withhold consent to the rate increase but also provided a vehicle by which the Commission could explain why it chose not to contest the new rates.[5]
Public counsel argues that the Commission’s failure to provide an immediate hearing has caused him prejudice because, under his interpretation of the file-and-suspend law, the Commission is obligated to enter an order eight months from the filing of the tariff requiring Southern Bell to collect all subsequent accounts under bond and subject to refund. We cannot agree. The provision of the statute to which he refers is only applicable when the Commission has withheld its consent to the rate change for a period of eight months from the date of the original filing. At this point all the rates (if consent was totally withheld) or such portion not consented to may be collected subject to the bonding and refund requirements of the statute. The statutory language permitting the company to collect the new rates under bond and subject to refund “at the end of such period” clearly refers to the eight-month period during which the company was precluded from implementing the new rates because *908 the Commission withheld its consent.[6]
The Commission also appears to have certain misconceptions of the file-and-suspend law.[7] The Commission designated its order of September 19, 1989, as a “final order approving tariff filings.” Apparently, the Commission believes that the new rates are final and only subject to change upon a hearing instituted by the filing of a complaint or upon motion of the Commission. This conclusion flies in the face of the file-and-suspend law which was only intended to provide a utility with'the ability to change its rates on an interim basis until such time as a hearing is held on the new tariff. Thus, the first portion of section 364.05(4) states that the Commission may withhold consent to the operation of a new rate schedule “[pjending a final order by the commission.” Further, the latter portion of the statute provides that “[t]he commission shall take final commission action in the docket and enter its final order within 12 months after the commencement date for final agency action,” and goes on to explain that the commencement date is the date upon which the telephone company has made a filing within the minimum filing requirements of the Commission. Southern Bell’s rates which became effective when the Commission chose not to withhold its consent were merely interim rates. The Commission cannot enter a final order without giving interested parties the right to a hearing.
Accordingly, we affirm the Commission’s order. It matters not whether the hearing on the final approval of the rates occurs in the context of public counsel’s complaint because Southern Bell will have the same burden to show that its proposed rates are fair as it would in any other request for a rate increase.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, EHRLICH, BARKETT and KOGAN, JJ., concur.

. Originally enacted in chapter 74-195, Laws of Florida, these laws at present are found in sections 364.05(4), 366.06(4), and 367.081(6), Florida Statutes (1989).

. At that time, the file-and-suspend law required the Commission to object to proposed tariff changes within thirty days.

. As authorized by section 364.05(2), Florida Statutes (1987), the Commission had reduced the statutory notice period for tariff filings within the approved rate band to thirty days in its October 27, 1987, order.

. Section 120.72(3), Florida Statutes (1989), states:
(3) Notwithstanding any provision of this chapter, all public utilities and companies regulated by the Public Service Commission shall be entitled to proceed under the interim rate provisions of chapter 364 or the procedures for interim rates contained in chapter 74-195, Laws of Florida, or as otherwise provided by law.

.While the Commission’s decision not to contest the tariff was no doubt influenced by the fact that the proposed rate increase was within the previously approved rate band, this does not provide the legal basis for our decision because the normal tariff-approval process remained applicable to the new filing.

. This interpretation is also consistent with the senate staff analysis which accompanied the 1980 amendment to section 366.06(4).

. While not applicable in this case, we note that during the 1990 session, in Senate Bill 2398, the Florida Legislature substantially amended chapter 364, Florida Statutes, including the rate change procedures found in section 364.05, Florida Statutes. Ch. 90-244, Laws of Fla.