991 So.2d 803 (2008)
Donald Dean KASISCHKE, Petitioner,
v.
STATE of Florida, Respondent.
No. SC07-128.
Supreme Court of Florida.
July 10, 2008.
Rehearing Denied September 19, 2008.
*805 Bennett H. Brummer, Public Defender, and Thomas Regnier, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Richard L. Polin, Assistant Attorney General, Bureau Chief, Linda S. Katz and Paulette R. Taylor, Assistant Attorneys General, Miami, FL, for Respondent.
CANTERO, J.
We review a statute that requires judges to impose conditions of probation on sexual offenders. At issue is whether the statute prohibits sexual offenders serving probation or community control from possessing any pornographic material at all or only such material relevant to the offender's deviant behavior. In the decision below, Kasischke v. State, 946 So.2d 1155, 1159 (Fla. 3d DCA 2006), the Third District Court of Appeal held that offenders cannot possess any such material. Its decision expressly and directly conflicts with the Second District Court of Appeal's decision in Taylor v. State, 821 So.2d 404, 405-06 (Fla. 2d DCA 2002), which held that a condition prohibiting the defendant from "viewing, owning, or possessing obscene, pornographic, or sexually explicit material," must relate to the defendant's "particular deviant behavior pattern." We have jurisdiction to resolve the conflict. See art. V, § 3(b)(3), Fla. Const. Because, as the Third District acknowledged, the statute "is undeniably susceptible to multiple and irreconcilable interpretations," 946 So.2d at 1157-58, we apply the rule of lenity. We therefore quash the decision below and approve the Second District's decision in Taylor.

I. FACTS AND PROCEDURAL HISTORY
The facts on which the underlying convictions are based are explained in the district court's opinion. See Kasischke, 946 So.2d at 1156. For our purposes, suffice it to say that the Petitioner, Donald Kasischke, pled guilty to three counts each of lewd or lascivious battery and exhibition on a child under age sixteen. He was sentenced to 364 days in prison, followed by two years of community control and eight years of probation. Section 948.03(5)(a), Florida Statutes (1999), requires that courts impose several conditions on sexual offenders receiving probation or community control. For example, defendants are subject to a curfew; they cannot live within 1000 feet of certain places, such as schools, where children congregate; and they must successfully *806 complete a sexual offender treatment program. Another condition that must be imposedthe one relevant hereis the following:
Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern.
§ 948.03(5)(a)(7), Fla. Stat. (1999).[1] The Petitioner's plea agreement included such a condition.[2] After he had been released from prison, and while he was serving his community control, a search of his home revealed allegedly "obscene, pornographic, or sexually stimulating" photographs, as well as a pornographic videotape. His community control was revoked and he was ordered incarcerated.
The parties do not dispute the pornographic nature of the videotape. They disagree, however, about whether the Petitioner's possession of these materials violated his community control. The State argues that his conditions forbid possession of any obscene or pornographic material, while the Petitioner argues that they only prohibit possession of such material relevant to his particular deviant behavior (in his case, paying a fifteen-year-old boy to allow him to perform oral sex on the boy and masturbating in the boy's presence).
On appeal, the Third District concluded that the statute was ambiguous. However, it analyzed the statute's legislative history, including a staff analysis explaining a 1997 amendment, and concluded that the Legislature intended to ban possession of all pornographic materials. Kasischke, 946 So.2d at 1159. In contrast, in a similar case, the Second District interpreted the same condition, albeit superficially, to prohibit only possession of materials relevant to the defendant's "particular deviant behavior pattern." Taylor, 821 So.2d at 405-06. We granted review to resolve the conflict. See Kasischke v. State, 954 So.2d 1156 (Fla.2007) (granting review).

II. ANALYSIS
The issue we consider is whether the statute prohibits possession of all pornographic materials, or only those "relevant to the offender's deviant behavior pattern." Although we quoted the statute above, because its language is central to our analysis, it bears repeating. It requires that any order imposing probation or community control include "a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern." § 948.03(5)(a)(7), Fla. Stat. (1999). The specific question is which part *807 of the sentence is modified by the phrase "relevant to the offender's deviant behavior pattern"? The State argues that the phrase modifies "sexually stimulating visual or auditory material," which would mean that the statute prohibits possession of all obscene and pornographic material, as well as "sexually stimulating visual or auditory material ... relevant to the offender's deviant behavior pattern." The Petitioner, on the other hand, argues that the phrase modifies "obscene, pornographic, or sexually stimulating visual or auditory material," so that the statute prohibits possession only of such material that is relevant to his deviant behavior. The dissents take a third view (one not advanced by either party here),[3] suggesting that "relevant to the offender's deviant behavior pattern" relates only to "telephone, electronic media, computer programs, or computer services." Lewis, J., dissenting op. at 817; Bell, J., dissenting op. at 829.
For the reasons explained below, we find section 948.03(5)(a)(7), Florida Statutes (1999), ambiguous. We therefore apply the rule of lenity and hold that the phrase "relevant to the offender's deviant behavior pattern" modifies each of the statutory prohibitions.

A. Plain Language
"The interpretation of a statute is a purely legal matter and therefore subject to the de novo standard of review." Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla.2006), cert. denied, ___ U.S. ___, 127 S.Ct. 1268, 167 L.Ed.2d 92 (2007). When construing a statute, we strive to effectuate the Legislature's intent. See, e.g., Borden v. East-European Ins. Co., 921 So.2d 587, 595 (Fla.2006) ("We endeavor to construe statutes to effectuate the intent of the Legislature."). To determine that intent, we look first to the statute's plain language. Id. at 595. "[W]hen the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." Id. (quoting Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64 (Fla.2005)).
We agree with the district court that this statute "is undeniably susceptible to multiple and irreconcilable interpretations." Kasischke, 946 So.2d at 1157-58. The plain language of the statute could be construed in at least four ways: (1) as prohibiting all obscene, pornographic, or sexually stimulating material, as well as any telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern, see Bell, J., dissenting op. at 829; (2) as clarifying that "telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern" are within the ban on "obscene, pornographic, or sexually stimulating" material, see Lewis, J., dissenting op. at 817; (3) as prohibiting only such material relevant to the offender's deviant behavior pattern; and (4) as prohibiting all obscene and pornographic material, but prohibiting sexually stimulating visual or auditory material only when relevant to the offender's deviant behavior pattern. Therefore, as did the district court, see 946 So.2d at 1158, we find the statute ambiguous. We cannot rely solely on its plain language to discover the legislative intent.
*808 Justice Lewis concludes that the plain language of the statute demonstrates that the Legislature intended the entire clause "including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern" as merely illustrating a category of materials within the ban on "any obscene, pornographic, or sexually stimulating material." Lewis, J., dissenting op. at 817. In other words, Justice Lewis argues that the Legislature intended to clarify that "Internet-based and other forms of electronic obscenity and pornography" were within the prohibition. Id. at 821. If this were the case, however, the Legislature could have ended the sentence after the phrase, "including telephone, electronic media, computer programs, or computer services." Under Justice Lewis's interpretation, these materials would be prohibited whether or not relevant to the offender's deviant behavior. But the Legislature did not end there; it added the phrase "that are relevant to the offender's deviant behavior pattern." This phrase must modify something. See, e.g., Martinez v. State, 981 So.2d 449, 452 (Fla. 2008) ("It is a basic rule of statutory construction that `the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.'" (quoting State v. Bodden, 877 So.2d 680, 686 (Fla.2004))). We cannot construe the plain language of the statute in a manner that renders this language superfluous.

B. Exploring Legislative History
The State argues that in determining the Legislature's intent, we should also review the statute's legislative history, and that the history supports the State's interpretation. Although not advanced by the parties, the dissents suggest that the bill title clarifies the Legislature's intent. Lewis, J., dissenting op. at 823-830; Bell, J., dissenting op. at 829-830. We now address these arguments.
Before 1997, the prohibition on obscene or pornographic materials read:
Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually explicit material.
§ 948.03(5)(g), Fla. Stat. (1995). Clearly, under this provision, the Legislature intended a total ban on obscene, pornographic, or sexually explicit material. In 1997, the Legislature amended this language as follows:
Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory explicit material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern.
Ch. 97-308, § 3, at 5520, Laws of Fla. (1997).[4] Given that the previous version of the statute already prohibited the possession of any "obscene, pornographic, or sexually explicit material," the 1997 amendment seems intended to narrow the prohibition's scope.[5] This is consistent *809 with Kasischke's proffered reading of the statute.
The dissenting justices cite the bill title as indicating that the Legislature intended to keep the broad ban on obscene and pornographic materials and either clarify that "telephone, electronic media, computer programs, or computer services" are within the ban, Lewis, J., dissenting op. at 823-824, or add to it a ban on "telephone, electronic media, computer programs, or computer services" relevant to the offender's deviant behavior, Bell, J. dissenting op. at 829-830. We certainly agree that the bill title may be helpful in determining legislative intent. See, e.g., Aramark Uniform & Career Apparel, Inc. v. Easton, 894 So.2d 20, 25 (Fla.2004) (quoting State v. Webb, 398 So.2d 820, 824-25 (Fla.1981)). We disagree, however, that in this case the bill title reveals the Legislature's intent one way or the other.
The title to chapter 97-308, Laws of Florida, states in pertinent part:
An act relating to sex offenders; ... amending section 948.03, F.S.; requiring a curfew between specified hours; providing alternatives; revising requirements for treatment for sex offenders; revising a provision that prohibits a sex offender from viewing, owning or possessing certain materials; prohibiting a sex offender from possessing telephone, electronic media, or computer programs or services that are relevant to the offender's behavior pattern; ....
Ch. 97-308, Laws of Fla. The dissents suggest that the clause "prohibiting a sex offender from possessing telephone, electronic media, or computer programs or services that are relevant to the offender's behavior pattern" in the bill title demonstrates that the phrase "relevant to the offender's deviant behavior pattern" is limited to "telephone, electronic media, or computer programs or services." Lewis, J., dissenting op. at 823-824; Bell, J., dissenting op. at 829-830. We disagree. This language in the bill title merely tracks the amendment to the statute; it does not clarify how that language is to be interpreted in relation to the remainder of the subsection. This ambiguity is further highlighted by the immediately preceding clause in the bill title, which states that it "revis[es] a provision that prohibits a sex offender from viewing, owning or possessing certain materials." Ch. 97-308, Laws of Fla. (emphasis added). If anything, this suggests that the Legislature did not intend to leave the broad ban intact, but instead intended to revise the entire provision. In short, the bill title simply does not clarify the ambiguities in the statute.
Justice Bell argues that the bill title demonstrates the Legislature's intent to keep the total ban on obscene and pornographic materials and add to it a ban on "telephone, electronic media, or computer programs or services that are relevant to the offender's behavior pattern." Bell, J., dissenting op. at 830. This interpretation, however, would require us to replace "including" in the statute with "as well as" or "and." To illustrate, if the Legislature *810 intended to simply add a prohibition on relevant telephone, electronic media, and computer programs or services to the total ban on obscene and pornographic materials, it would have amended the provision to read as follows:
Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including as well as telephone, electronic media, computer program, or computer services that are relevant to the offender's deviant behavior.
The Legislature did not include such language, and we cannot add it on our own. See, e.g., State v. City of Fort Pierce, 88 So.2d 135, 137 (Fla.1956) ("It is not the province of this Court to rewrite the acts of the Legislature.").
The State asks us to dive even deeper into the legislative history. It argues that a Senate Staff Analysis addressing the amendment, and the results of study by the National Institute of Justice (NIJ) cited there, demonstrate that the Legislature did not intend to narrow the broad ban on pornographic and obscene materials. See Fla. S. Comm. on Crim. J., CS/SB 1930 (1997) Staff Analysis (April 8, 1997) (on file with the Florida State Archives) [Staff Analysis] (citing Kim English, et al., Managing Adult Sex Offenders in the CommunityA Containment Approach, Nat'l Inst. Just. 1 (Jan. 1997) [NIJ report]).
As we recently noted, "[t]his Court is not unified in its view of the use of legislative staff analyses to determine legislative intent." GTC, Inc. v. Edgar, 967 So.2d 781, 789 n. 4 (Fla.2007); see also White v. State, 714 So.2d 440, 443 n. 5 (Fla.1998) (recognizing that staff analyses are not determinative of legislative intent, but are only "one touchstone of the collective legislative will" (quoting Sun Bank/South Fla., N.A. v. Baker, 632 So.2d 669, 671 (Fla. 4th DCA 1994))); American Home Assur. Co. v. Plaza Materials Corp., 908 So.2d 360, 376 (Fla.2005) (Cantero, J., concurring in part and dissenting in part) (proposing that "legislative staff analyses add nothing to an investigation of legislative intent"). In any event, a defendant on probation or community control cannot be expected to research staff analyses to determine whether particular conduct is permitted. The language of the statute should be enough.
Assuming that staff analyses can ever assist in determining legislative intent, in this case it is at best inconclusive. For example, the Staff Analysis states that the amendment would "clarify the condition of probation, community control, and conditional release that prohibits the possession, viewing, or use of sexually `explicit' material to be sexually stimulating visual or auditory material that would include telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern." Staff Analysis at 8. This sentence supports the State's argument that the Legislature intended to retain the total ban on pornographic or obscene material, and also to prohibit sexually stimulating material to the extent "relevant to the offender's deviant behavior pattern." The Staff Analysis also indicates, however, that the amendment was based, at least in part, on the NIJ report. See Staff Analysis at 6-7 (detailing the NIJ report). That report proposed a five-part model containment process for managing adult sex offenders. NIJ report at 3. The Staff Analysis notes that one of the components of managing adult sex offenders is "utilizing sex offender-specific containment strategies," "focus[ing] on a containment approach to case processing and case management that can *811 be tailored to the individual sex offender and his or her deviant sexual history." Staff Analysis at 7-8 (emphasis added) (quoting NIJ report at 3). The NIJ report also indicates that priorities include "individualized treatment, supervision, and surveillance," with "sex offender-specific probation or parole conditions." NIJ report at 5. One of the recommended offender-specific conditions is strikingly similar to that at issue here: "You shall not possess any pornographic, sexually oriented, or sexually stimulating visual, auditory, telephonic, or electronic media and computer programs or services that are relevant to your deviant behavior pattern." Id. at 5, 9 (suggesting "individualized supervision plans for adult sex offenders according to their particular risk factors"). This passage supports the Petitioner's argument that the Legislature intended to focus on the particular offender's deviant behavior and tailor the prohibitions accordingly.
Thus, some language from the Staff Analysis suggests an intent to retain the total ban on pornographic and obscene material and add a prohibition on possessing "sexually stimulating material" that is "relevant to the offender's deviant behavior pattern"; while other language suggests an intent to focus all prohibitions on the offender's specific deviant behavior.[6] Therefore, even if staff analyses may sometimes help in determining legislative intent, and even if we could expect defendants to review them to determine what conduct was permitted, the Staff Analysis here fails to clarify the Legislature's intent.

C. Applying the Canons of Statutory Construction
Where legislative intent is unclear from the plain language of the statute, we look to canons of statutory construction. Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000) ("[I]f the language of the statute is unclear, then rules of statutory construction control."). One such canon is the doctrine of the last antecedent, under which "relative and qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to, or including, others more remote." City of St. Petersburg v. Nasworthy, 751 So.2d 772, 774 (Fla. 1st DCA 2000). The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47.33 (7th ed.2007).
Commentators have questioned the doctrine's utility. See Terri LeClercq, Doctrine of the Last Antecedent: The Mystifying Morass of Ambiguous Modifiers, 2 J. Legal Writing Inst. 81, 89 (1996) ("[R]ather than becoming `one more aid' in interpretation as Sutherland hoped, the Doctrine of Last Antecedent has, in its hundred-plus year history, created as much confusion and disagreement as the ambiguous modifiers its drafter set out to clarify."). The very formulation of the doctrine recognizes its application only where "no contrary intention appears." Singer & Singer, supra, § 47:33 ("Referential and qualifying words and phrases, *812 where no contrary intention appears, refer solely to the last antecedent."). As Statutes and Statutory Construction explains, "[t]he rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent." Id.; see also Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) ("While [the doctrine of last antecedent] is not an absolute and can assuredly be overcome by other indicia of meaning, we have said that construing a statute in accord with the rule is `quite sensible as a matter of grammar.'" (quoting Nobelman v. Am. Savings Bank, 508 U.S. 324, 330, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993))); Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all."). One commentator has explained that the doctrine itself requires interpretation:
Sutherland begins with what seems the fall-back rule of statutory interpretation and concludes with his specific point. He begins with a qualifier, that interpreters should use the Doctrine of Last Antecedent "where no contrary intention appears." Appears where? Within the phrase or within the document as a whole? In the notes of the committee that wrote the original rule? If the language offers no "contrary intention," then the meaning is already "plain." If the contrary intent shows up within the sentence itself, then there is no need for the rule. And legislative intent or the drafter's intent is usually in question to begin with, so that search rarely clarifies the sentence in question.... Thus the Sutherland rule is a jumble.
LeClercq, supra, at 92-93 (footnotes omitted).
In any event, applying the doctrine here does not result in the State's suggested construction, which is that the phrase, "that are relevant to the offender's deviant behavior pattern" qualifies "sexually stimulating visual or auditory material." To reach this construction, we would have to insert a comma at the end of the intervening phrase "including telephone, electronic media, computer programs, or computer services." To explain, "commas are used to set off expressions that provide additional but nonessential information about a noun or pronoun immediately preceding. Such expressions serve to further identify or explain the word they refer to." William A. Sabin, The Gregg Reference Manual 34 (10th ed.2005). These expressions are parenthetical, meaning that the sentence can stand alone without them. When an expression is essential to the sentence, however, it is not separated with commas. Id. at 35; see also State v. Tunney, 77 Wash. App. 929, 895 P.2d 13, 16 (1995) ("Under the rules of punctuation, appositives which serve a nonrestrictive (parenthetic) function are set off by commas; appositives which serve a restrictive (necessary) function are not."), aff'd, 129 Wash.2d 336, 917 P.2d 95 (1996); Xcel Corp. v. Dir., Div. of Taxation, 4 N.J.Tax 85, 89, 1982 WL 628231 ("It is an elementary rule of grammar that commas are used to set off nonrestrictive appositives, which are nouns that immediately follow and provide additional but nonessential information about another noun in the sentence."), aff'd, 5 N.J.Tax 480, 1982 WL 628299 (Super.Ct.App.Div.1982). "Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately *813 preceding one may be found in the fact that it is separated from the antecedents by a comma." Singer & Singer, supra, § 47:33. Thus, to reach the State's proffered construction, we would have to read the phrase "including telephone, electronic media, computer programs, or computer services" as an appositive phrase that provides nonessential explanatory information about the immediately preceding phrase"sexually stimulating visual or auditory material." So construed, removing the phrase would make the sentence read, "or sexually stimulating visual or auditory material ... that are relevant to the offender's deviant behavior pattern."
The problem with such a construction is that the Legislature did not isolate with commas the phrase "including telephone, electronic media, computer programs, or computer services." We cannot read it as a parenthetical phrase by inserting a comma ourselves. See Wagner v. Botts, 88 So.2d 611, 613 (Fla.1956) ("We have no authority to insert punctuation marks which are not there in order to engraft upon the Act our notion of what the Legislature intended or should have intended.").[7]
Instead, under the doctrine of last antecedent, the last phrase would qualify the immediately preceding phrase, so that "relevant to the offender's deviant behavior pattern" would modify only "electronic media, computer programs, or computer services." See State ex rel. Owens v. Pearson, 156 So.2d 4, 6 (Fla.1963) ("[F]ollowing an enumeration in a series, a qualifying phrase will be read as limited to the last of the series when it follows that item without a comma or other indication that it relates as well to those items preceding the conjunction."); 48A Fla. Jur.2d Statutes § 133 (2007) (recognizing that under the doctrine of last antecedent, "a qualifying phrase in a statute is read as limited to the last item in a series when the phrase follows that item without a comma"). That interpretation, however, would lead to the absurd result that an offender would be prohibited from "viewing, owning, or possessing" all "obscene, pornographic, or sexually stimulating visual or auditory material" in print form, but not the same material in "telephone, electronic media, computer programs, or computer services" unless it was "relevant to the offender's deviant behavior pattern." Possession of a "sexually stimulating" photograph would violate the statute, but possession of a computer image of that photograph would not, unless it was relevant to the particular offender's deviant behavior pattern. We cannot apply the doctrine of last antecedent in a manner that leads to such a result. See, e.g., Warner v. City of Boca Raton, 887 So.2d 1023, 1033 n. 9 (Fla.2004) ("[A] statutory provision should not be construed in such a way that it renders the statute meaningless or leads to absurd results."); City of St. Petersburg v. Siebold, 48 So.2d 291, 294 (Fla.1950) ("The courts *814 will not ascribe to the Legislature an intent to create absurd ... consequences, and so an interpretation avoiding absurdity is always preferred."); Haworth v. Chapman, 113 Fla. 591, 152 So. 663, 665 (Fla.1933) ("There is a strong presumption against absurdity in a statutory provision; it being unreasonable to suppose that the Legislature intended their own stultification....").
The final possible interpretation of the last phrase is that it modifies the entire sentence so that defendants are prohibited from possessing any obscene, pornographic, or sexually stimulating material, but only to the extent the material is relevant to the offender's deviant behavior pattern. This interpretation seems at least as faithful an interpretation of the text as the others, if not more so. It has the benefit of prohibiting obscene, pornographic, and sexually stimulating material to the same extent and gives a logical meaning to the last phrase.
Such an interpretation is also supported by another canon of statutory construction: the rule of lenity. In Florida, the rule is not just an interpretive tool, but a statutory directive. See § 775.021(1), Fla. Stat. (2007) ("The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused."). The rule requires that "[a]ny ambiguity or situations in which statutory language is susceptible to differing constructions must be resolved in favor of the person charged with an offense." State v. Byars, 823 So.2d 740, 742 (Fla.2002) (emphasis added). As we have emphasized before, "`[o]ne of the most fundamental principles of Florida law is that penal statutes must be strictly construed according to their letter.'" Id. (quoting Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991)). "Indeed, our system of jurisprudence is founded on a belief that everyone must be given sufficient notice of those matters that may result in a deprivation of life, liberty, or property." Perkins, 576 So.2d at 1312; see also United States v. Santos, ___ U.S. ___, ___, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912, ___ (2008) (plurality opinion) ("Under a long line of our decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."); State v. Winters, 346 So.2d 991, 993 (Fla.1977) ("Penal statutes must be strictly construed in favor of the accused where there is doubt as to their meaning and must be sufficiently explicit so that men of common intelligence may ascertain whether a contemplated act is within or without the law, and so that the ordinary man may determine what conduct is proscribed by the statute.").
We recognize that the rule of lenity is a canon of last resort. See, e.g., United States v. Shabani, 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994) ("The rule of lenity, however, applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute."); cf. Bautista v. State, 863 So.2d 1180, 1185 n. 4 (Fla.2003) (recognizing that the rule of lenity does not apply where legislative intent to the contrary is clear). As discussed above, however, and as the Third District acknowledged in this case, the statute "is undeniably susceptible to multiple and irreconcilable interpretations." 946 So.2d at 1157. The dissenting justices have presented two of many possible interpretations of the statute. Their lengthy dissents to this opinion only highlight the difficulty in interpreting this hopelessly ambiguous statute. We have been unable otherwise to resolve this ambiguity and cannot simply choose our preferred *815 construction. We therefore apply the rule of lenity and hold that the limiting phrase "relevant to the offender's deviant behavior pattern" must be interpreted as qualifying each of the prohibitions in section 948.03(5)(a)(7).[8]See Clines v. State, 912 So.2d 550, 560 (Fla.2005) (applying the rule of lenity to an ambiguous statute that "generate[d] differing reasonable constructions"). In other words, the Petitioner violated the statute only if the "obscene, pornographic, or sexually stimulating" material recovered from his home was relevant to his "deviant behavior pattern." That issue has not been addressed in this case and is outside the scope of the conflict. See, e.g., McEnderfer v. Keefe, 921 So.2d 597, 597 n. 1 (Fla.2006) (declining to reach issues "that were either not directly addressed by the district court ... or were merely implied or cursory, at best"); Gaines v. Sayne, 764 So.2d 578, 586 (Fla. 2000) (declining to address an issue outside the scope of the conflict). We therefore leave it for resolution on remand.

III. CONCLUSION
We hold that the phrase "relevant to the offender's deviant behavior pattern" qualifies each of the prohibitions in section 948.03(5)(a)(7), Florida Statutes (1999). An offender does not violate this condition unless the "obscene, pornographic, or sexually stimulating" material at issue is relevant to the "deviant behavior pattern." We therefore approve the Second District's decision in Taylor and quash the Third District's decision in Kasischke. We remand this case to the district court with instructions that it be returned to the trial court for further proceedings consistent with this opinion.
It is so ordered.
QUINCE, C.J., and WELLS, ANSTEAD, and PARIENTE, JJ., concur.
LEWIS and BELL, JJ., dissent with opinions.
LEWIS, J., dissenting.
This case involves interpretation of section 948.03(5)(a)(7), Florida Statutes (1999), which is a default term of probation and community control for Florida's convicted sexual offenders. This question of statutory interpretation is subject to de novo review. See, e.g., Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64 (Fla. 2005). The 1999 version of section 948.03(5)(a)(7),[9] reads as follows:

*816 Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern.
(Emphasis supplied.) The majority opinion does not adequately address the presence or significance of (1) the adjective "any,"[10] (2) the participle "including,"[11] (3) the comma preceding "including," which further indicates that the entire clause introduced by "including" is illustrative,[12] or (4) a series of intervening nouns.[13]
When one reads section 948.03(5)(a)(7) it is apparent that the clause "including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern," is merely illustrative and indicates that these materials fall within the general ambit of the total prohibition against the sexual offender "viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material." Cf. Wagner v. Botts, 88 So.2d 611 (Fla.1956).[14] The grammatical structure and phrasing of this default term of sexual-offender probation and community control simply does not admit of any other reasonable interpretation; therefore, the rule of lenity does not apply. See, e.g., Clines v. State, 912 So.2d 550, 560 (Fla.2005) ("[T]he rule [of lenity] `is applicable to sentencing provisions' if they `create ambiguity or generate differing reasonable constructions.'" (quoting Nettles v. State, 850 So.2d 487, 494 (Fla.2003) (emphasis supplied)); Wallace v. State, 860 So.2d 494, 497-98 (Fla. 4th DCA 2003) ("Application of [the] rule [of lenity] means that if there is a reasonable construction *817 of a penal statute favorable to the accused, the court must employ that construction." (emphasis supplied))).
The majority spurns the intent of the Legislature, as expressed through the plain text of the statute, and similarly runs afoul of several canons of statutory construction. For these reasons, I must respectfully dissent.

I. ANALYSIS

A. The Plain Text of Section 948.03(5)(a)(7)
The plain text of section 948.03(5)(a)(7) clearly conveys the intent of the Legislature. Further, "the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent." Daniels, 898 So.2d at 64. Here, the plain text neither leads to an absurd outcome nor results in the creation or perpetuation of an unintended evil. Therefore, the analysis of the majority should have concluded with the plain text of the statute without applying such doctrines as the rule of lenity.
The Legislature has not in any way indicated an intent to abandon the total prohibition against sexual offenders "viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material." § 948.03(5)(a)(7), Fla. Stat. (1999) (emphasis supplied). Rather, the Legislature simply clarified that this broad prohibition "includ[es] telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern." Id. (emphasis supplied). This is an illustrative clause separated by a comma and introduced by the participle "including"; therefore, under the rules of grammar and the rule of the last antecedent, the relative clause "that are relevant to the offender's deviant behavior pattern" modifies the grouping of nouns "including telephone, electronic media, computer programs, or computer services," and does not modify the noun "material" contained in the separate, preceding clause "any obscene, pornographic, or sexually stimulating visual or auditory material." Id.;[15]see Owens, 156 So.2d at 6 ("[T]he established rules of grammatical construction [dictate] that, following an enumeration in series, a qualifying phrase will be read as limited to the last of the series when it follows that item without a comma or other indication that it relates as well to those items preceding the conjunction."); Bodden, 877 So.2d at 685 ("[T]he legislature is presumed to know the meaning of words and the rules of grammar[.]"); see also Gaffney v. Riverboat Servs. of Ind., Inc., 451 F.3d 424, 459 (7th Cir.2006) (stating that use of the participle "including" generally implies an illustrative application) (citing Black's Law Dictionary 687 (5th ed.1979)); In re Glunk, 342 B.R. 717, 729 (Bankr.E.D.Pa. 2006) (holding that the use of the participle "including" in 11 U.S.C. § 707(a) indicates that "the three enumerated grounds for dismissal [for lack of a good-faith filing] are illustrative and not exhaustive").
In this context, the reliance of Kasischke and the majority upon Porto Rico Railway, Light & Power Co. v. Mor, 253 U.S. *818 345, 40 S.Ct. 516, 64 L.Ed. 944 (1920), for a contrary rule of construction is misplaced and improper. See Initial Brief of the Petitioner on the Merits at 19-20; majority op. at 811-812. In Mor, the High Court stated that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." 253 U.S. at 348, 40 S.Ct. 516. However, the Court applied this rule of construction to section 41 of the Jones Act of March 2, 1917, to avoid a potentially absurd result: "Congress could not have intended to give the District Court [of Puerto Rico] jurisdiction of any controversy to which a domiciled alien is a party while denying under similar circumstances jurisdiction where a domiciled American is a party." Id. at 349, 40 S.Ct. 516.
However, in contrast to Mor, an absurd result will not occur based upon a plain-text interpretation of section 948.03(5)(a)(7). Further, a "natural construction of the language"[16] of section 948.03(5)(a)(7) demonstrates the grammatical incongruity of reading "relevant to the offender's deviant behavior pattern" as modifying a preceding clause which is separated from the former clause by (1) a comma, (2) an illustrative participle, and (3) a string of several nouns. Kasischke and the majority contend that a logical, grammatical reading of section 948.03(5)(a)(7)'s plain text (i.e., interpreting the clause "relevant to the offender's deviant behavior pattern" as modifying "telephone, electronic media, computer programs, or computer services") would lead to an absurd or unreasonable result. See Initial Brief of the Petitioner on the Merits at 19-20; majority op. at 808, 813-814. This is entirely incorrect based upon the language and organization of the statute. The Legislature intended to prohibit the "viewing, owning, or possessing" by convicted sexual offenders of "any obscene, pornographic, or sexually stimulating visual or auditory material," and simply clarified that this prohibition "includ[es] telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern." § 948.03(5)(a)(7), Fla. Stat. (1999) (emphasis supplied).
The majority is conspicuously silent with regard to much of this plain-text analysis. In my view, this silence represents an example of the "dog that didn't bark." See Sir Arthur Conan Doyle, Silver Blaze, in The Memoirs of Sherlock Holmes (1894).[17] An absurd or unreasonable result does not occur based on the plain text of the statute because the "including" clause is illustrative[18] and clarifies the fact that the total-prohibition clause "includes" otherwise innocuous electronic, telephonic, and computer-based materials. The modifying language "relevant to the offender's deviant behavior pattern" merely relates these otherwise innocuous materials back to the total-prohibition clause (i.e., it clarifies *819 that the only "telephone, electronic media, computer programs, or computer services" that convicted sexual offenders are prohibited from "viewing, owning, or possessing" are those that are "obscene, pornographic, or sexually stimulating" as a matter of law). § 948.03(5)(a)(7), Fla. Stat. (1999) (emphasis supplied). According to the evident language, punctuation, and syntactic organization of the statute, there is no difference between an offender's possession of a tangible photograph and the same image stored as a file on the offender's computer or, for that matter, presented as an image on the offender's television. If the photograph is "obscene, pornographic, or sexually stimulating" as a matter of law,[19] then Kasischkeand others subject to the same default term of probation and community controlwould be prohibited from "viewing, owning, or possessing" the photo regardless of whether it is in print, electronic, or televisual form. This is so because the total-prohibition clause, which bans "any obscene, pornographic, or sexually stimulating visual or auditory material," "includ[es] telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern." § 948.03(5)(a)(7), Fla. Stat. (1999) (emphasis supplied).
As stated in the statute, the total-prohibition clause applies "[u]nless otherwise indicated in the treatment plan provided by the sexual offender treatment program." § 948.03(5)(a)(7), Fla. Stat. (1999). However, here, the record does not indicate that any qualified decision-maker ever individually tailored Kasischke's *820 treatment plan by altering his default conditions of probation and community control with the approval of the appropriate court. Cf. § 948.03(6), Fla. Stat. (1999) (affording the appropriate court continuing jurisdiction to modify the offender's release conditions in proper circumstances). On the contrary, Kasischke's community-control officers advised him that the default total prohibition applied and that, consequently, he was prohibited from "viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material." § 948.03(5)(a)(7), Fla. Stat. (1999) (emphasis supplied).
The majority also offers suspect reasoning with regard to its claim that there are at least four acceptable interpretations of the statute. See majority op. at 807-808. The only grammatically acceptable reading of the statute requires that the clause "relevant to the offender's deviant behavior pattern" modify "telephone, electronic media, computer programs, or computer services," which is the same interpretative result reached in the other dissent. The majority's disjunctive listing of my interpretation of the statute and that offered in the other dissent is totally misleading. Both dissents have correctly interpreted the plain text of the statute; we simply arrive at that interpretation through different rationales.
The number of "interpretations" advanced by the majority is overly generous. One proffered interpretation, which was the interpretation adopted by the Third District below, is incorrect as a matter of grammar. The Third District erroneously adopted the State's alternative, secondary argument,[20] which applied the clause "relevant to the offender's deviant behavior pattern" to "sexually stimulating ... material," despite the fact that the adjectives "obscene" and "pornographic" also modify "material." See Kasischke, 946 So.2d at 1159-61. As explained above, "relevant to the offender's deviant behavior pattern" cannot modify "material" due to the syntax and punctuation of the statute. Further, even if this language could somehow modify "material," which it cannot, it would necessarily modify "material" in all of its applications (i.e., "obscene material," "pornographic material," and "sexually stimulating visual or auditory material"). Hence, the majority is really reduced to two of its "acceptable" interpretations of the statute. However, the majority's adopted reading is inconsistent with the statute as written; therefore, it is not an "acceptable" interpretation. See, e.g., Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 324 (Fla.2001) ("Under fundamental principles of separation of powers, courts cannot judicially alter the wording of statutes where the Legislature clearly has not done so."); Hawkins v. Ford Motor Co., 748 So.2d 993, 1000 (Fla.1999) ("[T]his Court may not rewrite statutes contrary to their plain language."). "[R]elevant to the offender's deviant behavior pattern" cannot modify the total-prohibition clause because of (1) the adjective "any," (2) the illustrative participle "including," (3) the comma preceding "including," and (4) a series of intervening nouns. § 948.03(5)(a)(7), Fla. Stat. (1999); see also Bismarck Lumber, 314 U.S. at 100, 62 S.Ct. 1; Bodden, 877 *821 So.2d at 685; Owens, 156 So.2d at 5; Wagner, 88 So.2d at 612-13. In sum, there is only one acceptable, grammatically sound interpretation of the statutethe plain-text interpretation outlined in this dissent as intended and written by the Legislature.
The error of Kasischke and the majority exists in their conflation of the purely illustrative "including" clause with the ban created in the primary total-prohibition clause. That the Legislature felt compelled to add this illustrative clause in 1997 makes perfect sense. See ch. 97-308, § 3, at 5520, Laws of Fla. During the mid-to-late 1990s, Internet-based and other forms of electronic obscenity and pornography were steadily increasing. Some commentators viewed these new materials as qualitatively different from traditional print-based or otherwise tangible obscene or pornographic materials. For example, as two commentators have explained:
The rapid, worldwide growth of the Internet leads to unprecedented opportunities in applications in business, communication, education, and entertainment. Commercial interests act as a driving force behind these applications, but one of the byproducts is sexlots of it. Sex is one of the most researched words on the Internet. Pornographic web sites have shown tremendous growth in the past few years, increasing by nearly 300 [sites] a day and [generating] $700 million in a year. [As of March 2002,] [t]hey total[ed] approximately 170,000. "Cybersex" or "cyberporn" came hand-in-glove with global interconnectivity.
Pornography on the Internet is unique because sexually explicit materials posted on the Internet differ from traditional forms of pornographic materials, such as magazines and videos, in several important ways: (a) it is widely available through Bulletin Board Services (BBS) groups and via the World Wide Web through database accesses, interactive services, e-mail, Internet Relay Chat (IRC), and real-time data feeds; (b) it is active and interactive through the presentation of materials in multimedia formats such as digitized moving images, animated sequences, sexually explicit texts, hot chats, and interactive sexual games; and (c) consumers also are producers of pornographic materials.... "Pornography in cyberspace is pornography in society just broader, deeper, worse, and more of it."
Ven-hwei Lo & Ran Wei, Third-Person Effect, Gender, and Pornography on the Internet, 46 J. Broad. & Elec. Media 13, 13-14 (2002) (some emphasis supplied) (citations omitted) (quoting Catherine A. MacKinnon, Vindication and Resistance: A Response to the Carnegie Mellon Study of Pornography in Cyberspace, 83 Geo. L.J.1959, 1959 (1995)).[21] Hence, the purely *822 illustrative "including" clause is not surplusage because it clarifies that the total-prohibition clause includes (but is not limited to or by) the potentially qualitatively different electronic and telephonic materials contained within the "including" clause. The modifier "relevant to the offender's deviant behavior pattern" merely relates the otherwise innocuous materials outlined in the "including" clause back to the total-prohibition clause's outright ban of "any obscene, pornographic, or sexually stimulating visual or auditory material." § 948.03(5)(a)(7), Fla. Stat. (1999) (emphasis supplied).
The construction advanced by Kasischke and the majority is simply unreasonable based upon the plain text of section 948.03(5)(a)(7) because such a construction is inconsistent with the language, punctuation, and syntax of the statute. Moreover, as I explain below, even if we move beyond the plain text of the statute, the relevant legislative history of section 948.03(5)(a)(7) confirms my interpretation of this subsection.[22]

B. The Relevant Legislative History
In 1995, the Legislature amended section "948.03, F.S., relating to terms or conditions of probation or community control" by "requiring mandatory special conditions of release for sexual predators and other specified offenders, under certain circumstances." Ch. 95-283, title, at 2651, Laws of Fla. As part of that amendment, the Legislature added what was then numbered section 948.03(5)(g). Ch. 95-283, § 59, at 2690, Laws of Fla. That subsection provided the following mandatory special condition of sexual-offender probation and community control:

Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually explicit material.
Id. (emphasis supplied). Thus, the statutory section began as a total ban against sex offenders "viewing, owning, or possessing any obscene, pornographic, or sexually explicit material." Id. (emphasis supplied).[23] From 1995 until 1996, section 948.03(5)(g) remained unchanged.
In 1997, the Legislature amended section 948.03 inter alia to "prohibit[] a sex offender from possessing telephone, electronic media, or computer programs or services that are relevant to the offender's deviant behavior pattern." Ch. 97-308, title, at 5515, Laws of Fla. In the same law, the Legislature also imposed the following mandatory conditions of sexual-offender probation and community control: (1) an offender curfew; (2) a requirement that offenders submit to specified warrantless searches; (3) "at least" annual polygraph examinations of offenders; (4) offender *823 maintenance of a driving log and a prohibition against offenders driving alone without prior permission; (5) a prohibition against offenders obtaining or using a post office box without prior approval; (6) HIV testing of offenders with the results released to the victims and their parents or guardians; and (7) electronic monitoring of offenders "when deemed necessary." Ch. 97-308, § 3, at 5519-21, Laws of Fla.
What is particularly relevant for our purposes is that the Legislature renumbered section 948.03(5)(g) as section 948.03(5)(a)(7) and provided the following revised language:
Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory explicit material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern.
Ch. 97-308, § 3, at 5520, Laws of Fla.[24] Consistent with the analysis in subpart A of my dissent, all that the Legislature accomplishedand intended to accomplish through this amendment was an expansion of "sexually explicit material" to "sexually stimulating visual or auditory material" and the addition of the illustrative "including" clause. Fla. S. Comm. on Crim. J., CS for SB 1930 (1997) Staff Analysis (Apr. 8, 1997) at 8 (on file with the Florida State Archives), at 8 ["SB 1930 Staff Analysis"]. The amended language did not alter the total ban against sexual offenders "viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory explicit material." Ch. 97-308, § 3, at 5520, Laws of Fla. As the title of the session law states, the Legislature additionally intended to "prohibit[] a sex offender from possessing telephone, electronic media, or computer programs or services that are relevant to the offender's deviant behavior pattern." Ch. 97-308, title, at 5515, Laws of Fla.[25] The session law does not contain any language supporting the grammatically strained reading of the majority, which applies the "including" *824 clause's "relevant to the offender's deviant behavior pattern" language to the total-prohibition clause by ignoring a preceding comma, an illustrative participle, and a string of intervening nouns.
The relevant staff analysis, which the majority half-heartedly consults, likewise does not support its labored reading of section 948.03(5)(a)(7).[26]Cf., e.g., White v. State, 714 So.2d 440, 443 n. 5 (Fla.1998) ("[W]e recognize that staff analyses are not determinative of final legislative intent, they are, nevertheless, `one touchstone of the collective legislative will.'" (quoting Sun Bank/S. Fla., N.A. v. Baker, 632 So.2d 669, 671 (Fla. 4th DCA 1994)); Reno v. Koray, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) ("The rule of lenity applies only if, `after seizing everything from which aid can be derived,' we can make `no more than a guess as to what Congress intended.'" (emphasis supplied) (quoting Smith v. United States, 508 U.S. 223, 239, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993); Ladner v. United States, 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958))).[27] *825 The majority focuses upon those portions of the staff analysis that propose "an individualized treatment plan" for sexual offenders, which would be "administered by specialized correctional probation officers with limited caseloads." SB 1930 Staff Analysis, at 1, 8; see majority op. at 810-811.[28] While this is true in an abstract sense, a selective focus on this portion of the staff analysis ignores a fact of which the Legislature was well aware: section 948.03(5)(a)(7) is a default condition that applies to all convicted sexual offenders under their terms of probation and community control so long as they committed their relevant offenses "on or after October 1, 1995." § 948.03(5)(a), Fla. Stat. (1999). This section itself does not represent any type of "individualized treatment" or individualized tailoring of the offender's treatment plan. That tailoring, if any, occurs through the modification of the default prohibition in light of the offender's treatment plan. Cf. § 948.03(6), Fla. Stat. (1999) ("The court may rescind or modify at any time the terms and conditions theretofore imposed by it upon the probationer or offender in community control."); § 948.03(2), Fla. Stat. (2007) (substantially similar). If no modification occurs, then the default prohibition applies and individual tailoring has not occurred.
The introductory clause of section 948.03(5)(a)(7) could not make this point any clearer: "Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program," the default total prohibition applies. § 948.03(5)(a)(7), Fla. Stat. (1999) (emphasis supplied). It is the duty of the sexual-offender treatment program and the offender's "triangle" of supervisors (i.e., "the treatment provider, the correctional probation officer, and the polygraph examiner") *826 to craft, implement, and enforcewith the approval of the courtany "individualized treatment plan." SB 1930 Staff Analysis, at 6-8. Individual tailoring is simply not accomplished through the plain text of the statute, which erects a broad default prohibition against "any obscene, pornographic, or sexually stimulating visual or auditory material." § 948.03(5)(a)(7), Fla. Stat. (1999) (emphasis supplied); see also Woodson v. State, 864 So.2d 512, 515 (Fla. 5th DCA 2004) (describing the default nature of the standard terms of probation and community control contained in section 948.03(5), Florida Statutes (2000)).
That the staff analysis explains the "five-part containment process" outlined in the NIJ report merely bolsters the understanding that individualized tailoring occurs through the treatment plan, not through the plain text of the statute. SB 1930 Staff Analysis, at 6-8. In particular, the staff analysis explains that the NIJ-inspired "sex offender-specific containment strategies," occur through: (1) the internal-control mechanisms that a trained therapist can hopefully instill in the offender; (2) the "[o]fficial supervision and monitoring" of the offender by the correctional probation officer; and (3) the promotion of "vital management and compliance feedback to the treatment provider and correctional probation officer" through the use of polygraph examinations of the offender. Id. As stated in the staff analysis, "the treatment provider, the correctional probation officer, and the polygraph examiner form a triangle of supervision around the sex offender." Id. at 7. It is this group, rather than the plain text of section 948.03(5)(a)(7), that may lead to an individualized treatment plan. However, if such individualized tailoring and a corresponding modification of the offender's standard terms of probation and community control do not occur, then the default total prohibition remains in effect. This is the only logical, grammatically sound reading of the standard condition:

Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern.
§ 948.03(5)(a)(7), Fla. Stat. (1999) (emphasis supplied). This plain-text reading of the statute is also consistent with the staff analysis, which explains that:
CS/SB 1930 would ... clarify the condition of probation, community control, and conditional release that prohibits the possession, viewing, or use of sexually `explicit' material to be sexually stimulating visual or auditory material that would include telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern.

SB 1930 Staff Analysis, at 8 (emphasis supplied).
The analysis of the majority is simply inconsistent with the plain text of the statute, the rules of grammar, and with legislative history, which includes the relevant staff analysis. This Court exists to interpret statutes, not rewrite them.[29] I would *827 enforce the statute as written instead of creating a mirage of ambiguity.

II. CONCLUSION
I cannot agree with the reading of nonexistent ambiguity into a clearly worded statute. Simply because the Third District and the majority have stated that section 948.03(5)(a)(7) "is undeniably susceptible to multiple and irreconcilable interpretations" does not make it so. Majority op. at 805, 807, 814 (quoting Kasischke, 946 So.2d at 1157). A simple, grammatical, plain-text reading of the statute makes it abundantly clear that the Legislature has maintained the total prohibition against convicted sex offenders "viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material" during the term of their probation or community control. § 948.03(5)(a)(7), Fla. Stat. (1999) (emphasis supplied). Further, the Legislature clarified that this prohibition "includ[es] telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern." Id. (emphasis supplied). Any tailoring of this default prohibition to the characteristics of the individual sexual offender occurs exclusively through the offender's treatment plan and a corresponding judicial modification of the default prohibitionnot through the statute itself. See id. ("Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program," the default prohibition applies. (emphasis supplied)). The majority creates ambiguity where none exists and "interprets" the statute contrary to the intent of the Legislature. The Legislature needs to address this statutory provision unless the judicially rewritten statute of the majority truly reflects a heretofore unexpressed legislative intent.
For these reasons, I respectfully dissent.
BELL, J., dissenting.
I dissent for two reasons. First, this Court has no jurisdiction over this case. Second, the majority's holding is contrary to readily discernible legislative intent. As I will show, the Legislature intended section 948.03(5)(a)(7) to prohibit supervised sex offenders from accessing obscene, pornographic, or sexually stimulating visual or auditory material. In addition to this broad antipornography ban, the Legislature intended section 948.03(5)(a)(7) to prohibit these offenders from utilizing telephone, electronic media, computer programs, and computer services that are relevant to their deviant behavior pattern.
I will first address jurisdiction. I will then show that there is clear legislative intent that resolves the statutory ambiguity. Finally, I will contextualize the issue by looking at the facts of the case before us.

*828 I. THE LACK OF JURISDICTION
The majority cites article V, section 3(b)(3) of the Florida Constitution as the basis for exercising jurisdiction. Article V, section 3(b)(3) provides that this Court may review any decision of a district court of appeal that "expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law." (Emphasis added.)
The Third District decision in Kasischke v. State, 946 So.2d 1155 (Fla. 3d DCA 2006), does not expressly and directly conflict with the Second District decision in Taylor v. State, 821 So.2d 404 (Fla. 2d DCA 2002). As the Third District correctly noted, the Second District's decision in Taylor did not expressly address the same question of law the Third District addressed in Kasischke, 946 So.2d at 1161. Specifically, the Second District in Taylor "only required that the probationary condition track the statutory language of section 948.03(5)(a)(7)" but "did not address whether or not the phrase `relevant to the offender's deviant behavior pattern' modified the ban on viewing or possessing pornographic material." Kasischke, 946 So.2d at 1161. Given the absence of express and direct conflict on the same question of law, this Court should discharge the case.

II. THE DISCERNIBLE LEGISLATIVE INTENT
On the merits, I first present the interpretive approach this Court customarily uses to determine legislative intent. I then apply this approach to the statute. This customary approach reveals that the majority has prematurely and, therefore, inappropriately applied the rule of lenity.

A. Our Customary Interpretive Approach
Our customary approach to statutory interpretation views legislative intent as the polestar that guides a court's statutory construction analysis. State v. J.M., 824 So.2d 105, 109 (Fla.2002). The search for legislative intent starts with the actual language of the statute. See Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla. 2000). If the statutory language is clear, the plain textual meaning indicates the legislative intent. See Cherry v. State, 959 So.2d 702, 713 (Fla.2007). However, if the statutory language is unclear, we continue our search for legislative intent. See Joshua, 768 So.2d at 435.
In discerning the legislative intent of an unclear statute, we "consider the statute as a whole, including the evil to be corrected, the language, title, and history of its enactment, and the state of law already in existence on the statute." State v. Anderson, 764 So.2d 848, 849 (Fla. 3d DCA 2000) (citing McKibben v. Mallory, 293 So.2d 48, 52 (Fla.1974)) (emphasis added). In a criminal case, if our legislative intent analysis fails to reveal a single, clear, and unambiguous meaning, the rule of lenity applies, and we must adopt a reasonable construction most favorable to the accused. See Clines v. State, 912 So.2d 550, 560 (Fla.2005). However, as the majority recognizes, the rule of lenity is a canon of last resort. It applies only if we have completed our customary legislative intent exploration and are still left without a clear understanding of the Legislature's intent. See State v. Rubio, 967 So.2d 768, 778 n. 9 (Fla.2007) (citing Bautista v. State, 863 So.2d at 1180, 1188 n. 9 (Fla. 2003)) (rule of lenity does not apply before a court engages in a search of legislative intent using traditional tools).

B. Applying This Customary Approach to the Statute
Considered as a whole, including (1) the title, (2) the existing status of the law and the history of the statutory *829 change, and (3) the evil to be corrected, section 948.03(5)(a)(7) unambiguously reveals the Legislature's intent that, unless the offender's treatment plan provides otherwise, a sex offender probationer or community controllee is prohibited from viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material. In addition to this broad antipornography prohibition, a sex offender is specifically precluded from telephone, electronic media, computer programs, and computer services that are relevant to the offender's deviant behavior pattern.
At this point, it is important to set forth the statute, the 1997 session law, and, most importantly, the 1997 session law title. The statute provides:
Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern.
§ 948.03(5)(a)(7), Fla. Stat. (1999). The 1997 session law enacting section 948.03(5)(a)(7) reveals the changes made to the 1995 statute. It reads, in relevant part:
Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory explicit material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern.
Ch. 97-308, § 3, at 5520, Laws of Fla.[30] Finally, and most important to the proper resolution of this case, the title to chapter 97-308, Laws of Florida, reads:
An act relating to sex offenders; amending s. 947.1405, F.S.; clarifying legislative intent regarding sentences that are eligible for conditional release supervision; requiring a curfew between specified hours; providing alternatives; revising requirements for treatment for sex offenders; revising a provision that prohibits a sex offender from viewing, owning, or possessing certain materials; prohibiting a sex offender from possessing telephone, electronic media, or computer programs or services that are relevant to the offender's behavior pattern; requiring that a sex offender submit to certain warrantless searches; requiring a sex offender whose crime was committed on or after a specified date to undergo polygraph examinations; requiring that such offender maintain a driving log and not drive a motor vehicle alone without prior approval; prohibiting such offender from obtaining or using a post office box without prior approval; amending s. 948.001, F.S.; defining the terms "sex offender probation" and "sex offender community control"; amending s. 948.03, F.S.; requiring a curfew between specified hours; providing alternatives; revising requirements for treatment for sex offenders; revising a provision that prohibits a sex offender from viewing, owning, or possessing certain materials; prohibiting a sex offender from possessing telephone, electronic media, or computer programs or services that are relevant to the offender's behavior pattern; requiring that a *830 sex offender submit to certain warrantless searches; requiring a sex offender whose crime was committed on or after a specified date to undergo polygraph examinations; requiring that such offender maintain a driving log and not drive a motor vehicle alone without prior approval; prohibiting such offender from obtaining or using a post office box without prior approval; requiring such offender to submit to HIV testing; requiring such offender to submit to electronic monitoring; providing an effective date.
Ch. 97-308, Laws of Fla. (emphasis added).[31]

1. The Title
"The title is more than an index to what the section is about or has reference to; it is a direct statement by the legislature of its intent." State v. Webb, 398 So.2d 820, 825 (Fla.1981) (citing Berger v. Jackson, 156 Fla. 251, 23 So.2d 265 (1945)); see also Parker v. State, 406 So.2d 1089, 1092 (Fla. 1981); Foley v. State, ex rel. Gordon, 50 So.2d 179, 184 (Fla.1951). In this case, the title to chapter 97-328 answers the question the majority says is dispositive, namely "which part of [section 948.03(5)(a)(7)] is modified by the phrase `relevant to the offender's deviant behavior pattern.'" Majority op. at 806.
The title to chapter 97-308 states in its relevant part that the Legislature amended section 948.03(5)(g) (postamendment section 948.03(5)(a)(7)) to "[revise] a provision that prohibits a sex offender from viewing, owning, or possessing certain materials; [prohibit] a sex offender from possessing telephone, electronic media, or computer programs or services that are relevant to the offender's behavior pattern." Ch. 97-328, Laws of Fla.[32] This title clearly shows that the Legislature intended the clause "that are relevant to the offender's deviant behavior pattern" in the postamendment statute to modify only "telephone, electronic media, computer programs, or computer services." Thus, as a result of the amendment, sex offenders are prohibited from utilizing telephone, electronic media, or computer programs or services that are relevant to the offender's behavior pattern in addition to the materials that had already been prohibited. This clear intent is consistent with the state of the law and the amendment's history.

2. The Existing State of the Law and the History of the Statutory Amendment
The previous version of the statute read:
Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually explicit material.
§ 948.03(5)(g), Fla. Stat. (1995). And the majority concludes that "[g]iven that the previous version of the statute already prohibited the possession of any `obscene, pornographic, or sexually explicit material,' the 1997 amendment seems intended to narrow the prohibition's scope." Majority op. at 809.
The majority's supposition is unfounded. Not only is it contrary to what the session law title unambiguously reveals, there is also absolutely nothing in the 1997 amendment's history to suggest any intention to *831 relax the preexisting blanket ban on obscene, pornographic, or sexually stimulating material. Indeed, the opposite is true: The Legislature amended section 948.03(5)(g) (postamendment 948.03(5)(a)(7)) to improve the effectiveness of supervising sex offenders in the community by (1) retaining the broad prohibition against obscene or pornographic materials by leaving that language unchanged; (2) changing the phrase "sexually explicit materials" to "sexually stimulating visual or auditory materials" in order to clarify the breadth of the prohibition; and (3) adding a prohibition of "telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern." Ch. 97-328, Laws of Fla. The effect of this change is an expansion, rather than a limitation, of the prohibition regarding obscene, pornographic, and sexually stimulating materials.
The overall scheme the Legislature enacted in 1997 evinces an intent to fortify control of sex offenders. Specifically, the Legislature enacted the following new restrictions:
[P]rohibiting a sex offender from possessing telephone, electronic media, or computer programs or services that are relevant to the offender's behavior pattern; requiring that a sex offender submit to certain warrantless searches; requiring a sex offender whose crime was committed on or after a specified date to undergo polygraph examinations; requiring that such offender maintain a driving log and not drive a motor vehicle alone without prior approval; prohibiting such offender from obtaining or using a post office box without prior approval; requiring such offender to submit to HIV testing; requiring such offender to submit to electronic monitoring....
Ch. 97-308, Laws of Fla. The Legislature also tightened the following existing restrictions: (1) changing the discretionary curfew into a mandatory curfew; (2) requiring a sex offender treatment program to be conducted by specifically trained therapists, unless such a trained therapist is not available; (3) requiring the additional approval from the victim and the therapist in addition to the sentencing court in order for a sex offender to contact the victim; and (4) requiring approval by the sentencing court in order for an offender to engage in unsupervised contact with a child, if certain other conditions are met. Id. Together with section 948.03(5)(a)(7), these measures constitute a comprehensive scheme to fortify community containment of sex offenders.
Read in this context, it is apparent that the Legislature amended section 948.03(5)(g) (postamendment 948.03(5)(a)(7)) to expand, rather than limit, the existing prohibition. Specifically, the clause regarding telephonic, electronic, or computerized materials was added to target otherwise benign services or materials that are used by some sex offenders as part of their particular deviancy.[33] Examples *832 of how this new restriction applies is the case of a sex offender whose deviant behavior pattern includes either luring children to meet him by trolling Internet services like MySpace.com or one who uses these media to trade in child pornography. This reasoning that the 1997 change was intended to expand the scope of prohibition, not to retract it as the majority holds, is even more compelling when one considers the evil to be corrected.

3. The Evil to be Corrected
As I will explain, the 1997 amendments to section 948.03(5)(a)(7) seek to minimize reoffense by improving the statutory "containment process." Specifically, according to the sponsor of the senate bill that resulted in the session law, the purpose of the changes was to "implement the recommendations of the National Institute of Justice regarding a new type of supervision for convicted sex offenders." Fla. S., tape recording of proceedings (April 25, 1997) (on file with Florida State Archives) (Senator Burt). The "new type of supervision for convicted sex offenders" to which Senator Burt referred, which was also cited in the Staff Analysis,[34] was a five-part model containment process recommended in the NIJ Research. Kim English, et al., Managing Adult Sex Offenders in the Community  A Containment Approach, Nat'l Inst. Just. (Jan. 1997).
The NIJ research recognizes that offender-specific probation or parole conditions play a crucial role in implementing its strategy and recommended fourteen sample conditions. Id. at 5. The top priority of these conditions is to "eliminate opportunities for reoffense  to protect victims and the general public." Id. The research specifically noted that the recommended strategy targeted "thoughts and feelings ... as a starting point for risk management," because "deviant thoughts and fantasies by sex offenders are precursors to sexual assault, and, therefore, are an integral part of the assault pattern." Id. Accordingly, treatment providers and supervising officers should instill in offenders "the dictum that deviant attitudes and fantasies are not acceptable." Id.
In light of the purpose of section 948.03, and especially of the critical role thoughts and fantasies play in preventing reoffense, the majority's supposition that "the 1997 amendment seems intended [by the Legislature] to narrow the prohibition's scope" is clearly erroneous. Majority op. at 808. Instead, as first revealed in the session law title, the Legislature supplemented the existing antipornography ban with new restrictions *833 to prevent recidivism and protect the community, especially potential victims. Because the session law title, the existing status of the law and the history of the statutory change, and the evil to be corrected all reveal an unambiguous legislative intent to expand the prohibition to include "telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern," this Court is obligated to interpret the statute to help achieve that intent, not frustrate it.

III. THE ISSUE IN CONTEXT
Now, because of the majority's unnecessary and unfortunate decision, Florida courts and law enforcement are left with a vague restriction on a sex offender's access to sexually stimulating material. This absurdity is illustrated by the facts of the case before us.
Dr. Kasischke was put on community control for lewd and lascivious assaults on a child under sixteen years of age. As stated by the Third District:
The defendant, who has a Ph.D. degree, was fifty-four years old at the time of the underlying offense. He was convicted of three counts of lewd and lascivious assault on a child under sixteen years of age. Specifically, the defendant solicited a fifteen year-old boy and offered him forty dollars so that he could perform oral sex on the boy. The defendant took the boy to a park where, behind the bushes, he unzipped the boy's pants and performed oral sex on the victim until the boy ejaculated in the defendant's mouth. Additionally, the defendant masturbated in the boy's presence.
Kasischke v. State, 946 So.2d 1155, 1156 (Fla. 3d DCA 2006). Dr. Kasischke agreed to plead guilty. His plea agreement included section 948.03(5)(a)(7) as a standard condition of his two years of community control and eight years of probation that would follow his 364 days in jail.
Dr. Kasischke violated his community control by possessing pornographic and obscene materials. Specifically,
[w]hile the defendant was under community control, officers executed a search of his home and found several photographs of nude young males and of males performing various sexual acts. Also recovered was a videotape in a kitchen drawer that was kept apart from other videotapes that the defendant kept near his television. The parties do not dispute that the videotape shows pornographic and obscene images. Among other things, the videotape depicts a young-looking male engaging in oral and anal sex with other males.
Id.
As the Third District noted, Dr. Kasischke does not dispute that the video he possessed was pornographic and obscene and that the video showed a young male having oral and anal sex with other males. Instead, Dr. Kasischke disputes whether his possession of this videotape violated section 948.03(5)(a)(7). As the Third District succinctly stated his argument:
Defendant argues that the phrase "relevant to the offender's deviant behavior pattern" should modify all aspects of the community control condition and, as such, only prohibits defendant from viewing or possessing material which is specifically related to his prior deviant acts. Under this view, the community control condition would be strictly limited to obscene and pornographic material that depicts fellatio or masturbation with an underage boy, similar to defendant's previous victim. Thus, the defendant contends that, since the defendant was convicted of a sexual offense on a minor under sixteen years of *834 age, the State must prove that the pornographic material involved a minor under sixteen for a community control violation to be found.
Id. at 1157.
The majority agrees with Dr. Kasischke that section 948.03(5)(a)(7) only prohibits a community supervised sex offender from viewing or possessing obscene, pornographic, or sexually stimulating material that is relevant to his "deviant behavior pattern."[35] In other words, to prove that Dr. Kasischke violated his community control condition imposed under section 948.03(5)(a)(7), the State has to establish that the pornographic material he possessed was relevant to his "deviant behavior pattern." What does this mean in practical terms? Does the State now have to establish the existence of a particular "deviant behavior pattern" for each supervised sex offender? Would the crimes Dr. Kasischke committed on one adolescent male be sufficient to establish such a pattern? If so, does the State, as Dr. Kasischke argues, also have to prove his material is related to the specific acts he committed? In other words, does the State have to prove that this material depicted fellatio or masturbation by an adult male with a fifteen-year-old boy? Unfortunately, the majority leaves this new relevancy question open for determination not only in this case, but in untold thousands of other cases involving community supervised sex offenders across this state.
As I have shown, disrupting the effective supervision of sex offenders and creating such uncertainty is unnecessary. The statute is intended to prohibit offenders like Dr. Kasischke from possessing any pornography.[36] And if Dr. Kasischke's use of any "telephone, electronic media, or computer programs or services" is relevant *835 to his deviant behavior pattern, as of 1997, section 948.03(5)(a)(7) prohibits any such usage.

IV. CONCLUSION
After considering the statute as a whole, including the title, the state of the existing law and the history of the statutory change, and the evil to be addressed, it is clear that the 1997 amendments to section 948.03(5)(a)(7) were never intended to narrow the preexisting ban on sex offenders' "viewing, owning, or possessing any obscene, pornographic, or sexually stimulating material." Instead, these amendments were clearly intended to (1) revise the broad antipornography prohibition to clarify that it encompassed "any obscene, pornographic, or sexually stimulating visual or auditory materials," and (2) add a prohibition of "telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern." As I have said, the majority's contrary holding is more than unfortunate; it is absurd. The facial ambiguity of this statute is clearly reconcilable. Therefore, there is no basis to apply the rule of lenity, especially to reach the incredible conclusion that the Legislature intended that community supervised sex offenders like Dr. Kasischke are only precluded from possessing or viewing obscene, pornographic, or sexually stimulating material that is narrowly relevant to an ill-defined "particular deviant behavior pattern."
Accordingly, if jurisdiction is retained, I would approve the result of the Third District decision in Kasischke and disapprove the Second District's decision in Taylor to the extent it interprets section 948.03(5)(a)(7) as not imposing a blanket ban.
NOTES
[1] This statute has been renumbered as section 948.30(1)(g), Florida Statutes (2007) ("Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, a prohibition on viewing, accessing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern.").
[2] Specifically, the condition stated: "The Defendant is prohibited from viewing, owning or possessing any obscene, pornographic or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs or computer services that are relevant to the offender's deviant behavior pattern, unless otherwise indicated in the offender's treatment plan."
[3] Although Justice Lewis suggests otherwise, Lewis, J., dissenting op. at 821 note 21, in response to questioning at oral argument, the State clarified that its argument was that "relevant to the offender's deviant behavior pattern" modifies "sexually stimulating visual or auditory material." We also note that the State conceded at oral argument that the language of the statute is ambiguous.
[4] Words stricken are deletions and words underlined are additions.
[5] Justice Bell notes that "[o]ther jurisdictions frequently condition a sex offender's ability to live in the community on total abstinence from sexual materials as well as the Internet and other computerized/telephonic equipment that facilitate one's access to prohibited materials." Bell, J., dissenting op. at 832 note 34 (citing United States v. Ristine, 335 F.3d 692 (8th Cir.2003), United States v. Taylor, 338 F.3d 1280 (11th Cir.2003), State v. Ehli, 681 N.W.2d 808 (N.D.2004), and People v. Harrisson, 134 Cal.App.4th 637, 36 Cal.Rptr.3d 264 (2005)). However, the cases cited involve language much broader than the language in this statute. See Ristine, 335 F.3d at 694 (upholding under a plain error standard, among others, special conditions prohibiting the defendant from "owning or possessing `any pornographic materials,'" and from having Internet service at his house); Taylor, 338 F.3d at 1285 (upholding a special condition of probation prohibiting the defendant from "using or possessing a computer with Internet access"); Ehli, 681 N.W.2d at 810 (upholding a condition prohibiting the defendant from using the Internet); Harrisson, 36 Cal.Rptr.3d at 266, 271 (upholding a condition prohibiting use of the Internet "in any way whatsoever"). Thus, they do not inform our analysis.
[6] Justice Lewis suggests that the Legislature amended the statute in 1997 in response to the growth of Internet-based and other forms of electronic pornography. Lewis, J., dissenting op. at 821-822. While it is plausible that some legislators had this concern, the Staff Analysis does not mention Internet growth, and the NIJ report specifically recommended a condition similar to that at issue here without mentioning concerns regarding growth of the Internet. See NIJ Report at 5.
[7] We note that even inserting a comma would not necessarily eliminate the ambiguity. The statute would then require "a prohibition on viewing ... any obscene, pornographic, or sexually stimulating ... material, including telephone, electronic media, computer programs, or computer services[,] that are relevant to the offender's deviant behavior." The statute could still be interpreted to prohibit only materials relevant to the offender's deviant behavior. If the Legislature intended to prohibit possession of all obscene or pornographic materials, as well as prohibit sexually stimulating material relevant to the offender's deviant behavior, it could have phrased the statute as follows: "a prohibition on ... possessing any obscene or pornographic material, or any sexually stimulating ... material that are relevant to the offender's deviant behavior, including telephone, electronic media, computer programs, or computer services."
[8] Justice Bell argues that our decision leaves Florida courts and law enforcement with a "vague" restriction because it requires a determination as to what materials are relevant to the offender's "deviant behavior pattern." Bell, J., dissenting op. at 834-835. However, his argument ignores that the condition at issue is not required where the treatment plan provided by the sexual offender treatment program provides otherwise. § 948.03(5)(a)(7), Fla. Stat. (1999) (prefacing the condition at issue with "[u]nless otherwise indicated in the treatment plan provided by the sexual offender treatment program"). Further, any problem determining what materials are "relevant to the offender's deviant behavior pattern" is a function of the language used by the Legislature, not our decision today. We note that even under Justice Bell's view, Florida courts would be required to determine what "telephone, electronic media, computer programs, or computer services" are "relevant to the offender's deviant behavior pattern."
[9] In 2004, the Legislature transferred the language contained in the 1999 version of section 948.03(5)(a)(7) to section 948.30(1)(g), Florida Statutes. See ch. 2004-373, § 18, at 2826-27, Laws of Fla. In 2005, the Legislature amended section 948.30(1)(g) by adding "accessing" to the total prohibition against convicted sexual offenders "viewing, accessing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material." Ch. 2005-67, § 4, at 467, Laws of Fla.; § 948.30(1)(g), Fla. Stat. (2005) (emphasis supplied).
[10] See Webster's Collegiate Dictionary 53 (10th ed. 1996) ("any ... adj.... unmeasured or unlimited in amount, number, or extent" (emphasis supplied)).
[11] See Fed. Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 100, 62 S.Ct. 1, 86 L.Ed. 65 (1941) ("[T]he term `including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." (emphasis supplied)); see also Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 189, 61 S.Ct. 845, 85 L.Ed. 1271 (1941) (substantially similar); Black's Law Dictionary 777-78 (8th ed.2004) ("The participle including typically indicates a partial list.... But some drafters use phrases such as including without limitation and including but not limited towhich mean the same thing." (emphasis supplied)).
[12] State v. Bodden, 877 So.2d 680, 685 (Fla. 2004) ("[T]he legislature is presumed to know the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the generally accepted construction, not only to the phraseology of an act, but to the manner in which it is punctuated." (quoting Fla. State Racing Comm'n v. Bourquardez, 42 So.2d 87, 88 (Fla. 1949)) (emphasis supplied)).
[13] See State ex rel. Owens v. Pearson, 156 So.2d 4, 5 (Fla. 1963) (describing the rule of the last antecedent).
[14] In Wagner, this Court interpreted the following language of chapter 27537, Laws of Florida (1951), as "clear and unambiguous": "The Civil Service is hereby divided into the unclassified and classified service. The unclassified service shall comprise: ... (g) Persons of highly technical or professional training including registered nurses employed by Escambia General Hospital." 88 So.2d at 612-13 (emphasis supplied). Specifically, the Court held that the clear language of the law mandated that a cartographer employed by Escambia County fell within the ambit of the descriptive clause "[p]ersons of highly technical or professional training," and that the language "including registered nurses employed by Escambia General Hospital," was purely illustrative. Id. (emphasis supplied).
[15] This is the same plain-text interpretation that the State offered the Third District below. See Kasischke v. State, 946 So.2d 1155, 1157 (Fla. 3d DCA 2006); Answer Brief of the Respondent on the Merits at 8, 11. In contrast, the Third District erroneously adopted the State's alternative argument, which applied the "relevant to the offender's deviant behavior pattern" language to "sexually stimulating... material," while ignoring the fact that the adjectives "obscene" and "pornographic" modify the same noun (i.e., "material"). See Kasischke, 946 So.2d at 1159-61.
[16] Mor, 253 U.S. at 348, 40 S.Ct. 516 (emphasis supplied).
[17] In Silver Blaze, Inspector Gregory believed that a stranger had stolen a race horse from the owner's stable during the night. However, Sherlock Holmes wondered how Gregory could account for the "curious incident" of the silence of the stable's guard dog. Holmes later explained that the dog did not bark because the thief was the horse's trainer (John Straker), whom the dog recognized as a familiar person. Thus, the dog's silence portended some significance.
[18] See note 11, supra, at 816; see also Merriam Webster's Collegiate Dictionary 578 (10th ed.1996) ("illustrative ... adj ...: serving, tending, or designed to illustrate ").
[19] "Obscenity" is a well-defined legal term of art. See, e.g., Miller v. California, 413 U.S. 15, 24-25, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). In contrast, "pornography" and "sexually stimulating material" may not be so well-defined. However, the Second and Third federal Circuits appear to have crafted a solution to this potential due-process issue. See United States v. Loy, 237 F.3d 251, 267 (3d Cir.2001) ("[T]he Constitution would not forbid a more tightly defined restriction on legal, adult pornography, perhaps one that... borrowed applicable language from the federal statutory definition of child pornography located at 18 U.S.C. § 2256(8)." (emphasis supplied)); United States v. Cabot, 325 F.3d 384, 385-86 (2d Cir.2003); United States v. Simmons, 343 F.3d 72, 81-82 (2d Cir.2003). These courts have drawn a distinction between the legally established definition of "obscenity," as recognized by the United States Supreme Court in Miller, and the terms "pornography" and "pornographic materials." These courts have also recognized that prohibitions against convicted sexual offenders possessing "pornography" may be cabined through selective incorporation of the definitions supplied in 18 U.S.C. § 2256. See, e.g., Simmons, 343 F.3d at 82 ("When the references to minors are omitted [from 18 U.S.C. § 2256], what remains is the definition of the broader category of pornography[.]").

A similar cabining of section 948.03(5)(a)(7), Florida Statutes (1999), and sections 948.30(1)(g), and 947.1405(7)(a)(7), Florida Statutes (2007), is possible through selective reference to the definitions contained in section 847.001, Florida Statutes. Such a cabining could be utilized to construe the terms "pornographic material" and "sexually stimulating visual or auditory material" to remove questions with regard to the constitutional requirements of due process. See § 847.001, Fla. Stat. (2007) (this statute contains detailed definitions of "child pornography" and "sexual conduct," which when appropriately redacted provide an equally detailed definition of "pornography"; further, the statute defines "sexually oriented material," which is sufficiently analogous to "sexually stimulating visual or auditory material" because the statutory term includes "any drawing, etching, painting, photograph, motion picture film, or sound recording that depicts sexual activity" (emphasis supplied)).
To avoid any due-process vagueness issues, reference to these statutory definitions could be utilized when construing this default term of sexual-offender probation, community control, and conditional release. I would leave for another day the question of whether these sufficiently definite classifications raise any overbreadth concerns.
[20] The State has consistently argued in the alternative by proffering (1) the correct plaintext interpretation of the statute and (2) the erroneous, grammatically incorrect interpretation adopted by the Third District. See Answer Brief of the Respondent on the Merits at 8, 11; Kasischke, 946 So.2d at 1157. The State has not abandoned this alternative stance; rather, before this Court, it understandably sought to sustain the interpretation established by the lower court.
[21] In support of this analysis, the authors cite the following books, articles, and studies: John Hagel III & Arthur G. Armstrong, Net Gain: Expanding Markets Through Virtual Communities (1997); Steven R. Johnson, Interface Culture: How New Technology Transforms the Way We Create and Communicate (1997); Evan I. Schwartz, Webonomics: Nine Essential Principles for Growing Your Business on the World Wide Web (1998); Tapscott et al., Blueprint to the Digital Economy: Creating Wealth in the Era of E-Business (1998); W. Chen, Web 547 is Launched to Combat Pornography in Cyberspace, China Times, July 22, 1999, at 7; Fred Hapgood, Sex Sells, Inc. Tech., at 4, 45-51 (1996); Alvin Cooper, Sexuality and the Internet: Surfing into the new Millennium, Cyberpsychol. & Behav., 1(2), at 1987-93 (1997); Martin Rimm, Marketing Pornography on the Information Superhighway: A Survey of 917,410 Images, Descriptions, Short Stories, and Animations Downloaded 8.5 Million Times by Consumers in Over 2000 Cities in Forty Countries, Provinces, and Territories, 83 Geo. L.J. 1849 (1995).
[22] The majority "explores legislative history" before applying the doctrines of statutory interpretation and canons of construction that may aid us in interpreting the text of the relevant statute. See majority op. at 808-813. However, we generally examine the statutory text, which may include the application of canons of construction and interpretive doctrines (such as our adherence to the established rules of grammar), and then consult relevant legislative history if further clarification is necessary or probative. See, e.g., State v. Sousa, 903 So.2d 923, 928 (Fla.2005) ("The fundamental rule of construction in determining legislative intent is to first give effect to the plain and ordinary meaning of the language used by the Legislature. Courts are not to change the plain meaning of a statute by turning to legislative history if the meaning of the statute can be discerned from the language in the statute.").
[23] As part of the same law, the Legislature added a parallel mandatory provision of sexual-offender conditional release. See ch. 95-283, § 57, at 2687, Laws of Fla.; § 947.1405(7)(a)(7), Fla. Stat. (2007).
[24] Additions appear in underlined text; deletions appear in strike through text.
[25] The majority attempts to group this statement with a separate statement of legislative intent (i.e., "revising a provision that prohibits a sex offender from viewing, owning, or possessing certain materials"). Ch. 97-308, title, at 5515, Laws of Fla.; see majority op. at 809-810. The majority fails to explain the significance of the fact that each statement of legislative intent is separated by a semicolon. See ch. 97-308, title, at 5515, Laws of Fla.; see also Merriam Webster's Collegiate Dictionary 1063 (10th ed.1996) ("semicolon ... n ...: a punctuation mark; used chiefly in a coordinating function between major sentence elements (as independent clauses of a compound sentence)" (emphasis supplied)). Moreover, from the context of the session law and the relevant staff analysis, it is clear that these independent title clauses describe the two separate changes affected by the session law with regard to this default condition of sexual-offender probation and community control: (1) the title language "revising a provision that prohibits a sex offender from viewing, owning, or possessing certain materials," refers to the deletion of "sexually explicit material," and its replacement with "sexually stimulating visual or auditory material"; whereas, (2) the title language "prohibiting a sex offender from possessing telephone, electronic media, or computer programs or services that are relevant to the offender's behavior pattern," refers to the addition of the illustrative "including" clause. Ch. 97-308, title, at 5515, Laws of Fla.; SB 1930 Staff Analysis, at 8 (emphasis supplied). Consequently, it is not surprising that the relevant independent clause of the session law title "tracks the amendment to the statute," because this is, in fact, the illustrative language present in the statute, which lends further support to the correct plain-text interpretation described in this dissent.
[26] The "backhanded" claim of the majority that Florida's citizens should not be required to consult staff analyses may be witty and cute but it is not analytically sound given that courts charged with the duty of interpreting statutes often utilize and reference many interpretive "tools" and canons of construction, which are quite understandably unknown and esoteric for lay members of the public. See majority op. at 810. These tools are generally not outlined in the statutes themselves; nevertheless, they remain well-recognized pillars of Florida and federal precedent. Cf., e.g., Johnson v. State, 602 So.2d 1288, 1290 (Fla.1992) (referring to the legislative history of section 893.13(1)(c)(1), Florida Statutes (1989), a criminal statute, to conclude "that the legislative history does not show a manifest intent to use the word `delivery' in the context of criminally prosecuting mothers for delivery of a controlled substance to a minor by way of the umbilical cord"); Muscarello v. United States, 524 U.S. 125, 132-39, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (relying upon the "basic purpose" and "legislative history" of 18 U.S.C. § 924(c)(1) (which included a Senate report) to determine the intent of Congress in using the word "carry" with regard to carrying "firearms" "during and in relation to" a "drug trafficking crime"; further, the High Court stated that "[t]he simple existence of some statutory ambiguity ... is not sufficient to warrant application of [the] rule [of lenity], for most statutes are ambiguous to some degree," and "[t]he problem of statutory interpretation in these cases is indeed no different from that in many of the criminal cases that confront us. Yet, this Court has never held that the rule of lenity automatically permits a defendant to win." (emphasis supplied)).
[27] I also disagree with the majority's contextual mischaracterization of dicta contained within our opinion in GTC, Inc. v. Edgar, 967 So.2d 781 (Fla.2007). See majority op. at 810. In Edgar, this Court consulted a staff analysis as relevant legislative history to confirm its interpretation of section 364.051(4)(b), Florida Statutes (2005). See 967 So.2d at 789. After confirming that reading of the statute, the Court then stated in a footnote that "[t]his Court is not unified in its view of the use of legislative staff analyses to determine legislative intent. See Am. Home Assurance Co. v. Plaza Materials Corp., 908 So.2d 360, 375-76 (Fla.2005) (Cantero, J., concurring in part and dissenting in part)." Id. at 789 n. 4 (emphasis supplied).

The "this Court" dicta contained within Edgar does not refer to this Court in an institutional, precedential sense. Rather, the dicta refers only to the seven individuals who currently sit as justices on "this Court." As a judicial institution, this tribunal has never permitted a series of special concurrences and dissents to undermine the clear law and precedent of Florida. Under binding precedent, legislative historyand specifically staff analysesremain appropriate tools to assist in discerning the intent of the Legislature. See, e.g., Edgar, 967 So.2d at 789; Fla. Dep't of Fin. Servs. v. Freeman, 921 So.2d 598, 600-01 (Fla.2006); Am. Home Assurance Co. v. Plaza Materials Corp., 908 So.2d 360, 368-69 (Fla.2005); Reform Party of Fla. v. Black, 885 So.2d 303, 309 n. 4 (Fla.2004); N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 622-24 (Fla.2003); In re Amendments to the Fla. Evid.Code, 825 So.2d 339, 340, 340 n. 1 (Fla.2002); Francis v. State, 808 So.2d 110, 139 (Fla.2001); May v. Ill. Nat'l Ins. Co., 771 So.2d 1143, 1152-53 (Fla.2000); Chiles v. State Employees Attorneys Guild, 734 So.2d 1030, 1032 (Fla.1999); Mays v. State, 717 So.2d 515, 518 n. 9 (Fla. 1998); White v. State, 714 So.2d 440, 443-44 (Fla. 1998); Leon County Educ. Facilities Auth. v. Hartsfield, 698 So.2d 526, 530 (Fla. 1997); M.P. v. State, 682 So.2d 79, 82 (Fla. 1996); Via v. Putnam, 656 So.2d 460, 463 (Fla. 1995); Eller v. Shova, 630 So.2d 537, 541-42 (Fla. 1993); Fla. League of Cities v. Smith, 607 So.2d 397, 398-99 (Fla. 1992); Haven Fed. Sav. & Loan Ass'n v. Kirian, 579 So.2d 730, 733 (Fla.1991); Citizens of the State of Fla. v. Wilson, 568 So.2d 904, 908 n. 6 (Fla. 1990); Magaw v. State, 537 So.2d 564, 566-67 (Fla. 1989); Coon v. Cont'l Ins. Co., 511 So.2d 971, 974 (Fla.1987); Ivey v. Chicago Ins. Co., 410 So.2d 494, 497 (Fla.1982).
Each District Court of Appeal also uses staff analyses. See, e.g., B.B. v. P.J.M., 933 So.2d 57, 65 n. 8 (Fla. 1st DCA 2006); Burke v. Esposito, 972 So.2d 1024, 1027-28 (Fla. 2d DCA 2008); State v. Calderon, 951 So.2d 1031, 1033-34 (Fla. 3d DCA 2007); Sun Bank/S. Fla., N.A. v. Baker, 632 So.2d 669, 671 (Fla. 4th DCA 1994); Childers v. Cape Canaveral Hosp., Inc., 898 So.2d 973, 975-77 (Fla. 5th DCA 2005). The current majority opinion attempts to alter this precedent through gradual subterfuge. I cannot take such a stance with regard to stare decisis unless and until the existing precedent is overruled. I am surprised that a majority opinion contains such language.
[28] The majority also places great reliance upon a model provision of sexual-offender conditional release outlined in the NIJ report. See majority op. at 811. However, the language of that model provision reflects the majority's desired judicial rewrite of section 948.03(5)(a)(7), rather than the statute that the Legislature actually adopted. If the Legislature truly intended for that model provision to govern in Florida then it would have simply adopted that language; however, it did not do so. Furthermore, the language, grammatical organization, and punctuation of the model provision and that of section 948.03(5)(a)(7), Florida Statutes (1999), are materially different, not "strikingly similar." Majority op. at 811 n. 6. The majority has thus redrafted the statute, but this is a power we lack under these circumstances. Cf., e.g., Hawkins, 748 So.2d at 1000 ("[T]his Court may not rewrite statutes contrary to their plain language.").
[29] The construction of the majority rewrites the statutory language in the following manner:

Unless otherwise indicated in the treatment plan provided by the sexual offender treatment program, A prohibition on viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory materialincluding telephone, electronic media, computer programs, or computer servicesthat are relevant to the offender's deviant behavior pattern.
§ 948.03(5)(a)(7), Fla. Stat. (1999) (as judicially rewritten by the majority). However, this Court lacks the power to alter legislation that is clear on its face and which leads to neither an absurd result nor an unintended evil. See, e.g., Clines v. State, 912 So.2d 550, 558 (Fla.2005) ("A court's function is to interpret statutes as they are written and give effect to each word in the statute." (quoting Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 324 (Fla.2001))); State v. Byars, 823 So.2d 740, 772, 744-45 (Fla.2002); Wagner, 88 So.2d at 613 ("The Act, as enacted, did not contain the commas that the appellants would insert. By re-arranging the words or inserting commas which the Legislature itself did not employ, we would change entirely the meaning of the section in dispute.").
[30] Words stricken are deletions and words underlined are additions.
[31] The title to the enrolled senate bill that resulted in chapter 97-328 is identical to the title to the session law. CS for SB 1930, 1997 Leg., Reg. Sess. (Fla. 1997).
[32] Using the exact same language, the Legislature also amended section 947.1405(7)(g) (postamendment section 947.1045(7)(a)(7)), which relates to conditional release of sex offenders.
[33] Other jurisdictions frequently condition a sex offender's ability to live in the community on total abstinence from sexual materials as well as the Internet and other computerized or telephonic equipment that facilitate one's access to prohibited materials. See United States v. Taylor, 338 F.3d 1280, 1285 (11th Cir.2003) (holding that special condition on defendant's supervised release prohibiting him from using or possessing computer with Internet access is not unreasonable or overbroad); United States v. Ristine, 335 F.3d 692 (8th Cir.2003) (affirming Ristine's supervised-release conditions that restricted his possession of pornography, his use of photographic equipment and computers, and his access to the Internet); People v. Harrisson, 134 Cal. App.4th 637, 36 Cal.Rptr.3d 264 (2005) (holding that probation condition that prohibited defendant from accessing the Internet was not unconstitutional); State v. Ehli, 681 N.W.2d 808, 809 (N.D.2004) (finding no constitutional violation where defendant, who pleaded guilty to continuous sexual abuse of a minor, was prohibited from accessing the Internet).
[34] As the majority points out, the Staff Analysis did note that one of the components of managing adult sex offenders is "utilizing sex offender-specific containment strategies ... focus[ing] on a containment approach to case processing and case management that can be tailored to the individual sex offender and his or her deviant sexual history." Majority op. at 811. However, the Staff Analysis also clarifies that this "sex offender-specific containment strategy" consists of three elements that work together: (1) providing offender-specific treatment to help offenders learn to develop internal control; (2) official supervision and monitoring to exert external control; and (3) prompting vital management and compliance feedback to the treatment provider and the correctional probation officer. See Staff Analysis at 7 (emphasis added) (citing NIJ report at 4). So it is the offender-specific treatment that makes the whole strategy "offender-specific." The Staff Analysis never mentions that an offender-specific strategy requires permitting an offender to view "nonrelevant" pornography.
[35] Unfortunately, the majority declines to address Dr. Kasischke's argument below that the State has to prove his material depicted fellatio or masturbation by an adult male with a fifteen-year-old boy and, thereby, bypasses the opportunity to provide some much-needed parameters for its decision. Instead, the majority leaves this new relevancy question open for determination by the lower court. In doing so, the relevancy question remains open not only in this case but also in the supervision of untold thousands of community supervised sex offenders across this state. Opening up these sensitive cases to such vague "relevancy" questions is not the only problem. Narrowing the scope of prohibited materials to that which is "relevant" to the offender's deviant behavior pattern substantially increases the risk of supervised sex offenders accessing material that will stimulate them to commit new crimes. This risk is wholly unnecessary because section 948.03(5)(a)(7) clearly was never intended to apply so narrowly.
[36] Prohibiting sex offenders from accessing pornography is the normative practice in federal and state jurisdictions. See, e.g., United States v. Locke, 482 F.3d 764 (5th Cir.2007) (upholding the federal district court's special probation condition that prohibited the defendant, who pleaded guilty to one count of possessing child pornography, from having access to the Internet and from viewing, possessing, or obtaining pornography in any form); Farrell v. Burke, 449 F.3d 470 (2d Cir.2006) (upholding the special condition prohibiting the defendant, who paid four boys between the ages of thirteen and sixteen for sex with him, from possessing pornographic material); Fernandez v. State, No. A-8484, (Alaska Ct.App. Mar. 31, 2004), 2004 WL 719553 (affirming the lower court imposition of a probation condition that bars the appellant, who pleaded guilty to two counts of first-degree sexual abuse of a minor, from possessing adult pornography); People v. Huber, 139 P.3d 628 (Colo.2006) (holding that defendant, who was charged with sexual assault on a child by one in a position of trust and indecent exposure, violated the conditions of his deferred judgment by, among other things, possessing pornographic images); State v. Murphy, No. CR9688132 (Conn.Super.Ct. Jan. 23, 2007), 2007 WL 354870 (holding defendant violated his probation conditions by, among other things, possessing pornography while a sex offender).