# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA
_____

Case No. 5D22-603
LT Case No. 2020-11958-CODL
_____

MERCURY INDEMNITY COMPANY
OF AMERICA,

    Appellant,

    v.

CENTRAL FLORIDA MEDICAL &
CHIROPRACTIC CENTER, INC.
d/b/a STERLING MEDICAL GROUP
a/a/o STHEFANY SANTIAGO,

    Appellee.

_____

On appeal from the County Court for Volusia County.
Robert A. Sanders, Jr., Judge.

Diane H. Tutt, of Conroy Simberg, Hollywood, for Appellant.

Douglas H. Stein, of Douglas H. Stein, P.A., Coral Gables, for
Appellee.

October 27, 2023

EISNAUGLE, J.

    Mercury Indemnity Company of America ("Mercury")
appeals a summary final judgment in favor of Central Florida
Medical & Chiropractic Center, Inc. d/b/a Sterling Medical Group

a/a/o Sthefany Santiago ("Sterling"), arguing that Sterling failed to comply with a condition precedent to suit because its notice of intent to initiate litigation (the "notice of intent" or "notice") did not provide the information required by section 627.736(10), Florida Statutes (2019). Specifically, Mercury argues that Sterling's notice was deficient because it stated the amount originally billed for each individual charge rather than "each exact amount claimed to be due" after adjustments and subtracting prior payments made by Mercury. We disagree with Mercury's reading of the statute and affirm.

## Facts and Procedural History

The operative facts are not in dispute. Mercury issued an automobile insurance policy with Personal Injury Protection ("PIP") benefits to Sthefany Santiago (the "insured"). During the effective dates of coverage, the insured was involved in an automobile accident, received medical treatment from Sterling, and assigned her benefits under the insurance policy to Sterling.

Sterling submitted medical bills to Mercury for treatment rendered to the insured. When Mercury failed to make payment in full, Sterling sent Mercury a notice pursuant to section 627.736 alleging that Mercury failed to pay overdue PIP benefits. The notice listed, among other items, benefits due as "$1,597.91 (minus prior payments made, if any)," and included an itemized statement of each original charge. Mercury failed to make any additional payment on the overdue claim, and Sterling filed suit.

Sterling eventually moved for summary judgment, and Mercury responded by filing a cross-motion, arguing that Sterling failed to comply with a condition precedent to suit because the notice failed to allege "each exact amount claimed to be due." The trial court rejected Mercury's argument and rendered summary final judgment for Sterling. This appeal follows.

## Statutory Interpretation

When interpreting a statute, we "follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey,

2

in their context, is what the text means.'" *Richman v. Calzaretta*, 338 So. 3d 1081, 1082 (Fla. 5th DCA 2022) (alteration in original) (quoting *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020)). Importantly, we must "arrive at a 'fair reading' of the text by 'determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.'" *USAA Cas. Ins. Co. v. Mikrogiannakis*, 342 So. 3d 871, 873 (Fla. 5th DCA 2022) (alteration in original) (quoting *Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 323–24 (Fla. 2022)).

Of course, when interpreting any legal text, grammar and punctuation matter. "The legislature is presumed to know the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the generally accepted construction, not only to the phraseology of an act but to the manner in which it is punctuated." *Fla. State Racing Comm'n v. Bourquardez*, 42 So. 2d 87, 88 (Fla. 1949); *accord* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 141 (2012) ("[D]rafters . . . are presumed to be grammatical in their compositions."). That said, the "presumption of legislative literacy is a rebuttable one," and can be "overcome by other textual indications of meaning." Scalia & Garner, *Reading Law* at 141.

**The PIP Statute's Notice of Intent and Itemized Statement**

When interpreting a statute, it is always wise to begin with the text itself. Section 627.736 provides, in pertinent part:

(10) Demand letter. —

(a) As a condition precedent to filing any action for benefits under this section, written notice of an intent to initiate litigation must be provided to the insurer. Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).

(b) The notice must state that it is a "demand letter under s. 627.736" and state with specificity:

1. The name of the insured upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the insured.

2. The claim number or policy number upon which such claim was originally submitted to the insurer.

3. To the extent applicable, the name of any medical provider who rendered to an insured the treatment, services, accommodations, or supplies that form the basis of such claim; *and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due.* A completed form satisfying the requirements of paragraph (5)(d) or the lost-wage statement previously submitted may be used as the itemized statement.

§ 627.736, Fla. Stat. (2019) (emphasis added).

On appeal, Mercury offers two primary reasons why the itemized statement required by section 627.736(10)(b)3. must include "each exact amount" *remaining due* after adjusting the claim and accounting for previous payments. First, Mercury reads the statute to require the disclosure of "each exact amount claimed to be due," arguing that the clause "claimed to be due" applies to all three antecedents, and not only the last antecedent—the "type of benefit."

Second, Mercury argues that its interpretation of "each exact amount" is necessary to accomplish the "purpose" of the statute, which in Mercury's view, is to put an insurer on notice of the actual amount for which it will be sued, relying on our sister courts' decisions in *Rivera v. State Farm Mutual Automobile Insurance Co.*, 317 So. 3d 197, 204 (Fla. 3d DCA 2021) and *Chris Thompson, P.A. v. Geico Indemnity Co.*, 347 So. 3d 1, 2 (Fla. 4th DCA 2022).[1]

---

[1] Mercury's initial brief does not clearly or directly argue that the notice of intent in this case was deficient because it included too many items in the itemized statement. In other

4

As a preliminary matter, we acknowledge that interpreting section 627.736(10) is complicated by the fact that the provision does not directly address the question raised on appeal. In other words, the text of the statute could call for "each exact amount overdue" or "each exact amount originally billed for the charge." And while this difficulty is evidenced by a split among our sister courts, we conclude the statute's plain language does not require Sterling's notice of intent to calculate "each exact amount claimed to be due" by adjusting the claim and accounting for any prior payments.

First, we will explain why the doctrine of the last antecedent, a rule of grammar, refutes Mercury's argument that the phrase "claimed to be due" modifies the term "each exact amount." Second, we will demonstrate that Mercury's view of the statute's "purpose" is overly broad and not supported by the text of the statute. Third, and finally, we will analyze the statute as a whole to discern the plain and ordinary meaning of the phrase "each exact amount."

**The Statute's Grammatical Construction**

We first address Mercury's argument that the phrase "claimed to be due" modifies the phrase "each exact amount." Based on the doctrine of the last antecedent, we disagree.

"The doctrine of the last antecedent is a rule of grammatical construction providing that 'relative and qualifying

words, as we read it, Mercury makes no "kitchen sink" argument in its initial brief. To the extent such an argument is raised in the reply brief, we do not consider it. *See Johnson v. State*, 135 So. 3d 1002, 1029 n.11 (Fla. 2014) ("An issue may not be raised for the first time in a reply brief."); *Hoskins v. State*, 75 So. 3d 250, 257 (Fla. 2011) ("[T]his argument was not raised in the initial brief filed here.").

words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to, or including, others more remote.'" *Principal Life Ins. Co. v. Halstead as Tr. of Rebecca D. McIntosh Revocable Living Tr.*, 310 So. 3d 500, 503 (Fla. 5th DCA 2020) (quoting *Kasischke v. State*, 991 So. 2d 803, 811 (Fla. 2008)). While "the doctrine can 'be overcome by other indicia of meaning[,]' . . . use of the doctrine is 'quite sensible as a matter of grammar.'" *Id.* (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).

Also, as we have explained, the doctrine of the last antecedent has "a well-established corollary rule based on simple punctuation." *Id.* Therefore, "[w]here the modifier is set off from two or more antecedents by a comma, the supplementary 'rule of punctuation' states that the comma indicates the drafter's intent that the modifier relate to more than the last antecedent." *Bingham, Ltd. v. United States*, 724 F.2d 921, 925 n.3 (11th Cir. 1984) (emphasis omitted).

Here, the modifying phrase "claimed to be due" is not set-off by a comma. Therefore, the corollary rule does not apply, and the doctrine itself indicates the modifier applies only to the phrase immediately preceding it—"type of benefit." *Accord Bain Complete Wellness, LLC v. Garrison Prop. & Cas. Ins. Co.*, 356 So. 3d 866, 872 (Fla. 2d DCA 2022) ("[T]he phrase 'claimed to be due' does not modify the phrase 'each exact amount,' but rather the phrase it immediately follows—'type of benefit.'").

Importantly, we find no "other indicia of meaning" in the statutory language that would overcome application of the doctrine. Instead, other parts of the statute seem to support the same conclusion. For instance, if the phrase "claimed to be due" modifies the phrase "each exact amount," as advanced by Mercury, then it must also modify the phrase "date of treatment, service, or accommodation."

However, the sentence would be awkward if we read it to require a claimant to state the "date of treatment, service, or accommodation claimed to be due." As the text seems to contemplate, by the time the type of itemized statement in this

6

case is sent, the "treatment" is already rendered and the "date" is in the past. § 627.736(10)(b)3. (requiring the notice to state the "name of any medical provider who *rendered . . .* treatment") (emphasis added).[2] Given the context, we fail to see how previously rendered treatment, or the date thereof, could be "due."

Therefore, the doctrine of the last antecedent instructs that the phrase "claimed to be due" modifies only the last antecedent—"type of benefit"—and not the phrase "each exact amount."

### The Statute's "Purpose"

Next, we address Mercury's argument that the purpose of the notice is not just notice of intent to sue, but also to "notif[y] the insurer as to the exact amount for which it will be sued if the insurer does not pay the claim," quoting *Rivera* and *Chris Thompson*.

We disagree with Mercury and conclude that both *Rivera* and *Chris Thompson* misinterpret section 627.736(10) based on an overly broad understanding of the statute's purpose. While the fair reading method "requires an ability to comprehend the *purpose* of the text, which is vital to its context . . . the purpose is to be gathered only from the text itself, consistently with the other aspects of context." Scalia & Garner, *Reading Law* at 33. In other words, a court must identify a statute's purpose based on the text alone, and not based on what, in its own estimation, might "make a lot of sense." *Id.* at 39 ("Not only is legal drafting sometimes imperfect, but often the imperfection is the consequence of a compromise that it is not the function of the courts to upset.").

---

[2] We recognize that the statute also anticipates a notice could be sent for "future treatment not yet rendered." However, in such a circumstance, the text requires the itemized statement to state "the type, frequency, and duration of future treatment claimed to be reasonable and medically necessary."

Yet *Rivera* and *Chris Thompson* expressly do just that. Indeed, *Rivera* reasoned:

> If the intent of § 627.736(10) is to reduce the burden on the courts by encouraging the quick resolution of PIP claims, *it makes sense* to require the claimant to make a precise demand so that the insurer can pay and end the dispute before wasting the court's and the parties' time and resources.

317 So. 3d at 204 (emphasis added) (quoting *Venus Health Ctr. (a/a/o Joally Rojas) v. State Farm Fire & Cas. Co.*, 21 Fla. L. Weekly Supp. 496a (Fla. 11th Cir. Ct. Mar. 13, 2014)).[3]

When a court interprets statutory text based on what "makes sense" to the court, rather than what the text demands, the court creates a new statute. Scalia & Garner, *Reading Law* at 39 ("What the purposivist has done is to create a *new* ordinance."). But we have no authority to write a new statute, regardless of how much sense it might make to us. *See Buechel v. Shim*, 340 So. 3d 507, 511 (Fla. 5th DCA 2021) ("Any public policy considerations raised by [a statute] are for the legislative branch, not a court." (citing Art. II, § 3, Fla. Const.)).

Critically, we find nothing in section 627.736(10)'s text requiring a notice of intent to put the insurer on notice of the "exact amount for which it will be sued." Although not mentioned in *Rivera* or *Chris Thompson*, it is true that the statute's text affords an insurer the opportunity to avoid litigation. To that end, section (10)(d) provides:

> If, within 30 days after receipt of notice by the insurer, the overdue claim specified in the notice is paid by the insurer together with applicable interest and a penalty of 10 percent of the overdue amount paid by the insurer,

---

[3] *Chris Thompson*, in turn, relied on both *Rivera* and *Venus Health Center*.

subject to a maximum penalty of $250, no action may be brought against the insurer.

§ 627.736(10)(d), Fla. Stat. (2019).

While this language certainly gives the insurer an opportunity to avoid litigation by paying an overdue "claim," it says nothing about a right to be told the "exact amount for which [an insurer] will be sued."[4] As such, Mercury's argument attempts to expand the purpose of the statute beyond its text, and in essence, seeks to improperly "create a new" statute. Scalia & Garner, *Reading Law* at 39; *State v. McKenzie*, 331 So. 3d 666, 671 (Fla. 2021) ("Context is important as 'a tool for understanding the terms of the law, not an excuse for rewriting them.'" (quoting *King v. Burwell*, 576 U.S. 473, 500-01 (2015) (Scalia, J., dissenting))).

As this case illustrates, statutory interpretation can be a complicated task. And it is all too easy to misidentify the purpose of a statute when the search for meaning begins with conclusions about the policy the legislature might have been trying to advance rather than simply scrutinizing the text of the statute. But the error is drawn into even sharper focus in this case because the text of the statute not only fails to sustain the purpose announced in *Rivera* and *Chris Thompson*, but instead conclusively forecloses such a broad purpose.

Specifically, as discussed further below, section 627.736(10) provides that an insured or assignee may submit a completed Centers for Medicare and Medicaid Services (CMS) 1500 form "as the itemized statement." § 627.736(5)(d), (10)(b)3. But the CMS 1500 form[5] does not contemplate the use of adjusted amounts[6] or

_____

[4] *Rivera* also mentions the statute's express purpose stated in section 627.731. But again, the text in that section does not establish that the notice of intent must put an insurer on notice of "the exact amount for which it will be sued."

[5] Having afforded the parties a "reasonable opportunity to present information" as required, we take judicial notice of form

9

subtracting prior payments made by Mercury,[7] and therefore could not, if used as an itemized statement and "properly completed," put an insurer on notice of the amount for which it will be sued. In short, the fact that the legislature chose to permit a party to utilize such a form as the itemized statement eviscerates Mercury's expansive reading of the statute's purpose.

## The Meaning of "Each Exact Amount"

While the doctrine of the last antecedent tells us that the modifying phrase "claimed to be due" does not modify the phrase "each exact amount," and we have explained why Mercury's reliance on an overly broad statutory "purpose" is without merit,

---

CMS 1500 (a version of which appears in our record) and its instructions (which do not appear in our record) pursuant to section 90.204, Florida Statutes (2023). We conclude that taking judicial notice is necessary because the form is substantively incorporated into the statute. *See* § 627.736(5)(d), (10)(b)3. Therefore, we cannot read the statute as a whole without considering the form itself.

[6] The form's instructions for Item Number 24F—labeled "$ Charges"—require entry of the "total *billed* amount for each service line." CMS 1500 form instrs. at 40 (emphasis added). Likewise, the instructions for Item Number 28—labeled "Total Charge"—require "the *total billed* amount for all services entered in 24F." CMS 1500 form instrs. at 50 (emphasis added).

[7] On appeal, Mercury appears to take the position that CMS 1500 requires a claimant to account for "prior payments" because the form calls for a claimant to enter the "Amount Paid" in Item Number 29. But a cursory reference to the form's instructions reveals that the "Amount Paid" in Item Number 29 "is the payment received from the patient or *other* payers." CMS 1500 form instrs. at 51 (emphasis added). Given the fact that form CMS 1500 would put Mercury on notice of a claim for payment in the first instance, and considering the form and instructions in their entirety, we conclude "other payers" excludes prior payments from Mercury.

10

our work is not yet finished. To resolve this case, we must now discern the meaning of the phrase "each exact amount." While the phrase itself, when considered in isolation, does not clearly indicate which "exact amount" is required, we can glean the term's plain meaning from the text and structure of the statute when read as a whole. *See Kidwell Grp., LLC v. ASI Preferred Ins. Corp.*, 351 So. 3d 1176, 1179 (Fla. 5th DCA 2022) ("[S]ound interpretation requires paying attention to the whole law, not homing in on isolated words or even isolated sections." (citation omitted)).

To begin this part of our analysis,[8] we observe the statute establishes that an assignee or insured can seek reimbursement pursuant to a PIP policy by putting the insurer on notice of "a covered loss and of the amount of same." § 627.736(4)(b). Importantly, the statute then describes this initial written notice of a covered loss as the "claim." § 627.736(4)(b)1.–2.[9]

The statute likewise anticipates that a "claim" can include any number of individual charges, and if only a portion of a claim is paid, an insurer must provide a claimant with "an itemized specification of each item that the insurer had reduced, omitted, or declined to pay." § 627.736(4)(b)2. Generally, a claim is overdue "if not paid within 30 days after the insurer is furnished written notice." § 627.736(4)(b), (6)(b).

With that background in mind, we turn our focus to the specific subsection at issue in this case. Subsection (10)(a)

---

[8] While we must consider the entirety of the statute to determine the meaning of "each exact amount" in this case, we caution that our discussion of other parts of the statute is solely to explain our interpretation of subsection (10)'s requirements for an itemized statement. We do not, and cannot in this case, reach a holding concerning other parts of the PIP statute.

[9] Consistent with the statute, the instructions for form CMS 1500 also use the term "claim." CMS 1500 form instrs. at 7 ("Enter in the white, open carrier area the name and address of the payer to whom this claim is being sent.").

11

requires a claimant to send a notice of intent to initiate litigation as a condition precedent to filing an "action for benefits," and provides that the "notice may not be sent until the *claim* is overdue, including any additional time the insurer has to *pay the claim* pursuant to paragraph (4)(b)." § 627.736(10)(a) (emphasis added). Moreover, (10)(b)2. requires the notice to state with specificity the "*claim number* or policy number upon which *such claim* was *originally* submitted to the insurer." § 627.736(10)(b)2. (emphasis added). The notice must also disclose the name of the medical provider who rendered "the treatment, services, accommodations, or supplies that *form the basis of such claim*." § 627.736(10)(b)3. (emphasis added).

Thus, based on the text, the notice of intent is anchored in the original "claim" sent pursuant to subsection (4)(b), which put the insurer on notice of the covered loss in the first instance (or in this case, a number of covered losses). Importantly, we find no indication in the statute, and Mercury has identified none, that subsection (4) and subsection (10) use the term "claim" to describe two substantively different things.

To the contrary, when the legislature intended to describe something other than the original "claim," it knew how to do so. Specifically, subsection (10)(d) differentiates between an "overdue claim" and the "overdue amount" for purposes of calculating a penalty on overdue claims. In that situation, the legislature saw fit to calculate the penalty based only on the "overdue amount"—not on the "overdue claim."

These statutory breadcrumbs lead us to a fair reading of the phrase "each exact amount" as used in the statute. To summarize, if: (1) the "claim" is the initial demand for payment of benefits, (2) a "claim" can include more than one individual item, (3) the notice of intent puts an insurer on notice that a "claim" is overdue, and (4) an "overdue claim" is different than an "overdue amount," then the "itemized statement specifying each exact amount" is a reference to the various individual items included in the original (and now overdue) "claim." In other words, the legislature could have based the notice of intent and itemized statement on the "overdue amount" if it wanted to do so, but did

not. Instead, the notice requirement is grounded on the overdue "claim."

Our interpretation of the phrase "each exact amount" is bolstered by, and we find this part particularly persuasive, the statute's authorization to use a form as the itemized statement—such as a CMS 1500 form, UB 92 form or any other standard form approved by the office and adopted by the commission. *See* § 627.736(5)(d), (10)(b)3. The statute indicates that the primary use of CMS 1500 is to put an insurer on notice of a claim in the first instance—when a claimant initially bills an insurer. *See* § 627.736(4) & (5)(d). Moreover, if "properly completed," the form itself calls for the billed amount for each charge, and as one might expect given the form's primary use in a PIP claim, does not anticipate adjustment of any given charge based on prior payments from the insurer, the insurer's chosen reimbursement rate, or otherwise.[10] In short, the permissible use of a form, such as CMS 1500, as the itemized statement supports our interpretation of the statute, and is in tension with the meaning Mercury advances.[11] *But see Mercury Indem. Co. of Am. v. Pan Am Diagnostic of Orlando*, 368 So. 3d 27, 31 (Fla. 3d DCA 2023) ("Our decision in *Rivera*, . . . is therefore distinguishable because

---

[10] In fact, the form's instructions indicate that previous versions of the form required a claimant to identify the "Balance Due" at Item Number 30, but on the current form, "this field has been eliminated." CMS 1500 form instrs. at 51.

[11] Sterling argues that, due to an information gap, it could not know certain information necessary to adjust the claim (for example, the reimbursement methodology chosen by the insurer) at the time the notice of intent is sent. While we cannot foreclose the possibility that, in some cases, there could remain a meaningful information gap at the time of the notice, at least in this case, the Explanation of Benefits appears to disclose the reimbursement methodology and the amount of the reduction for the items at issue. As such, our record does not appear to demonstrate any information gap. Nevertheless, this is of no consequence because, as we have explained, the statute's text does not require Sterling to adjust the claim.

13

the insured in that case did not endeavor to comply with the statute through the alternative of attaching the completed CMS-1500 form.").[12]

## Conclusion

Therefore, reading the entire statute as a whole, we conclude that the plain and ordinary meaning of section 627.736(10) requires an itemized statement to list "each exact amount" as billed in the claim and not "each exact amount claimed to be due," or "each overdue amount," after adjusting the claim and subtracting any prior payments made by Mercury.[13]

We certify conflict with *Rivera* and *Chris Thompson.*

AFFIRMED; CONFLICT CERTIFIED.

KILBANE and MACIVER, JJ., concur.

---

[12] We recognize that the panel in *Pan Am Diagnostic* distinguished *Rivera* based on use of the form by the claimant in that case. However, we do not read subsection (10) as creating two substantively different types of itemized statements. Instead, the plain language of the statute says the "completed form satisfying the requirements of paragraph (5)(d) . . . may be used *as* the itemized statement." § 627.736(10)(b)3. (emphasis added).

[13] We have not overlooked that the statute permits a claimant to submit "[a] completed form . . . or the lost-wage statement *previously submitted*" as the itemized statement. § 627.736(10)(b)3. (emphasis added). If the phrase "previously submitted" modifies the phrase "completed form," then this is further evidence to support our interpretation of the statute. But given the other indicia of meaning to support our interpretation of the term "each exact amount," including that the statute requires the form to be properly completed (i.e. pursuant to the instructions) without regard to when the form is completed, we do not languish over this additional point.

14

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____